UNITED STATES of America,
Plaintiff-Appellee,

v.

Howard Dale BERNARD,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Ralph Maurice COMSTOCK, Jr.,
Defendant-Appellant.

Nos. 79–1356, 79–1357.

United States Court of Appeals,
Ninth Circuit.

July 30, 1980.

Wallace, Circuit Judge, concurred and filed opinion.

Carroll D. Gray, Asst. U. S. Atty., Spokane, Wash., for plaintiff-appellee.

Robert H. Whaley, Winston & Cashsat, David W. Henault, Henault & Hancock, Spokane, Wash., for defendants-appellants.

Before DUNIWAY and WALLACE, Circuit Judges, and JAMESON,* District Judge.

DUNIWAY, Circuit Judge:

Bernard and Comstock appeal from judgments of conviction of conspiring to manufacture methamphetamine, a violation of 21 U.S.C. §§ 841 and 846. They were separately indicted and tried together. An unindicted co-conspirator, one Richard May, was the major witness to criminal activity on the part of the appellants.

We reverse and remand for a new trial.

### I. The Facts.

In December 1977, on behalf of an agricultural research firm, Bernard ordered from the Physicians and Surgeons Supply House in Spokane, Washington some methylamine, a chemical that it is not unlawful to order, sell or possess, but that is used in the manufacture of methamphetamine, a controlled substance. The Drug Enforcement Administration (DEA) learned of the order and furnished the Supply House with a can in which a radio transmitter had been installed. The can was to be used as a container of Bernard's methylamine. No warrant was obtained for surveillance of the can. No evidence produced at trial involved Comstock in the ordering of the methylamine. No Supply House witnesses could identify Comstock at trial.

Two individuals, one of whom was identified as Bernard, retrieved the order in the can containing the beeper at Garrett Freight Lines in Lewiston, Idaho. Witnesses were unable to identify Comstock as the other of these men.

DEA agents attempted to maintain surveillance of the can by radio receiver after it was retrieved. They lost contact, but were later able to find the can through the use of a radio direction finder. Signals from the beeper were coming from the home of one Randy Wakefield in Clarkston, Washington. Wakefield testified that he was unaware of the type of chemicals the can contained and that Comstock and Bernard removed the can from his house. The location of the can was apparently lost again until it surfaced in Meacham, Oregon on March 28, 1978.

All other evidence supporting Bernard's and Comstock's involvement in the conspiracy comes from the testimony of May. He testified that the alleged conspirators (Comstock, Bernard, and others) began to manufacture methamphetamine at a ranch in Idaho, later moving the apparatus to a motel room in Clarkston, Washington. While the receipt for the room was in Comstock's name, the motel manager was unable to identify Comstock and the handwriting on the receipt and the motel registration was not shown to be his. An explosion in the motel room caused the alleged conspirators to move the apparatus to another location in Clarkston where additional efforts to manufacture methamphetamine were made. The remaining facts regarding the trial will be stated in our discussion of the issues to which they are relevant.

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

II. *Failure of the District Court to give Requested Instructions.*

May testified that at the time of the pertinent events he was taking substantial amounts of drugs. He said that he was "shooting" methamphetamines "20 times a day" around the clock, had been awake for approximately two weeks immediately before the events he described and had not eaten during that period, suffering a dramatic weight loss. He testified that the drugs "made [him] crazy"—"not in [his] right mind." He further testified that he was experiencing hallucinations, that his perception of reality was distorted, and that his memory was fuzzy.

May testified that DEA Agent Fredericks told him that he would not be prosecuted for anything he had done if he would testify against his co-conspirators. This statement was corroborated by Fredericks. May admitted that he had received money from Fredericks for becoming an informant in the case.

The court refused, when requested, to instruct the jury with respect to the special caution and careful consideration to be used in judging the credibility of an accomplice who testifies.[1] The defense made timely objection to the court's refusal to give this instruction.

■ In *United States v. Davis*, 9 Cir., 1971, 439 F.2d 1105, we held that refusal to give special instructions on the testimony of an accomplice when that testimony is important to the case can be prejudicial error. There the defendant's guilt rested almost entirely on the testimony of the accomplice, and the other evidence linking the defend-

ant to the criminal activity was weak. Here it is true that there was other evidence about the activities of Bernard, but it dealt entirely with the methylamine, the can in which it was carried around, and the retrieval of the can by Bernard and another man. All of these activities were lawful. They became relevant as being preliminary to the planned manufacture of methamphetamine only because of the testimony of May, on the basis of which the jury could have found that these otherwise lawful activities were part of a scheme to commit unlawful acts. Accomplice testimony is "inevitably suspect" and unreliable. *Bruton v. United States*, 1968, 391 U.S. 123, 136, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476. *See also On Lee v. United States*, 1952, 343 U.S. 747, 757, 72 S.Ct. 967, 973, 96 L.Ed. 1270; *Crawford v. United States*, 1909, 212 U.S. 183, 203–204, 29 S.Ct. 260, 267–268, 53 L.Ed. 465. Failure to instruct the jury in the manner requested was prejudicial error and requires reversal in this case.[2]

■ The Government's theory that the summation arguments of the defendants' counsel adequately admonished the jury to consider accomplice testimony with caution is unpersuasive. A jury's response to instructions from the judge is, and should be, quite different from its response to arguments from counsel. Counsel's argument is neither law nor evidence, and the jury is so instructed. While it is not reversible error to fail to do so, in a case like this, it would be better for the trial judge to instruct the jury on accomplice testimony even if such an instruction were not requested. *See United States v. Davis, supra*, 439 F.2d at

---

1. The requested accomplice instruction from *Devitt and Blackmar Federal Jury Practice and Instructions*, 3rd ed., § 17.06, read as follows:

   DEFENDANT'S PROPOSED INSTRUCTION NO. 22

   "An accomplice is one who unites with another person in the commission of a crime, voluntarily and with common intent. An accomplice does not become incompetent as a witness because of participation in the crime charged. On the contrary, the testimony of one who asserted by his testimony that he is an accomplice, may be received in evidence and considered by the jury, even though not

   corroborated by other evidence, and given such weight as the jury feels it should have. The jury, however, should keep in mind that such testimony is always to be received with caution and considered with great care." Devitt and Blackmar, § 17.06.

2. There was more evidence against Bernard than against Comstock, but the additional evidence dealt primarily with his procuring the methylamine, which, standing alone, is not unlawful. Thus May's testimony was as vital to the government's case against Bernard as it was to the case against Comstock.

1106; *Bible v. United States*, 9 Cir., 1963, 314 F.2d 106, 108.

■ The prejudice caused by a failure to give a cautionary instruction about accomplice testimony is increased when the witness' testimony may .be considered otherwise unreliable. Defense counsel requested additional cautionary instructions because May was a paid informant,[3] was a drug addict, and was not prosecuted in return for his agreement to testify.[4] These requests were also refused. In *United States v. Morgan*, 9 Cir., 1977, 555 F.2d 238, 242–243, we discussed the use of multiple instructions regarding accomplice testimony and the testimony of paid informers or witnesses granted immunity.[5] We said that "there is no significant [difference] between a cautionary instruction on the testimony of an accomplice and a cautionary instruction on one granted immunity. In both instances, the jury is instructed that the testimony 'be received with caution and weighed with

care.' " *Id.* at 243. We held that it did not matter which instruction was given, an accomplice instruction substantially the same as that quoted in footnote 1, or an informant instruction substantially the same as that quoted in footnote 4, *supra*. Nor do we find here a distinction between those instructions and Defendant's Proposed Instruction No. 21, footnote 3, *supra*. However, we suggest to the trial judge that, in light of the multitude of reasons justifying jury instructions regarding the credibility of May's testimony, it would be better, in a second trial, to give the jury an instruction combining these reasons.

May admitted at trial that he was a drug addict. The trial judge refused to give a requested instruction on the credibility of a drug addict.[6] Although refusal to give such an instruction, by itself, would not constitute reversible error, if the instruction we have suggested were given, we again suggest that the credibility of May's testimony

3. Ordinarily we consider that a person is an informer if he is attempting to gather evidence or information in an undercover capacity for the government. *See United States v. Busby*, 9 Cir., 1973, 484 F.2d 994, 995, and *United States v. Morgan*, 9 Cir., 1977, 555 F.2d 238, 242–243. However, although May does not fit this description, he was paid by the government for information that he gave after the events in question had occurred. We think that, at least for the purpose of the informant instruction, he was an informant.

4. The proposed instructions from Devitt and Blackmar, §§ 17.02 and 17.04, which counsel requested were these:
    DEFENDANT'S PROPOSED INSTRUCTION NO. 19
    "The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest, or by prejudice against the defendant." Devitt and Blackmar, § 17.02.
    DEFENDANT'S PROPOSED INSTRUCTION NO. 21
    "One who testified under a grant of immunity with a promise from the government that he will not be prosecuted is a competent witness. His testimony may be received in evidence and considered by the jury even

though not corroborated or supported by other evidence.
    "Such testimony, however, should be examined by you with greater care than the testimony of any ordinary witness. You should consider whether the testimony may be colored, in such a way as to further the witness's own interest, for a witness who realizes that he may procure his own freedom by incriminating another has a motive to falsify. After such consideration, you may give the testimony of the immunized witness such weight as you feel it deserves." Devitt and Blackmar, § 17.04.

5. A grant of immunity by the court is substantially the same as an agreement by the government not to prosecute, at least insofar as it affects a witness' motivations.

6. DEFENDANT'S PROPOSED INSTRUCTION NO. 20
    "If an informer is also a narcotics addict, there are additional reasons why his testimony should be considered with great care. An addict has a constant need for a supply of drugs and for money to support his habit, and also may have an abnormal fear of imprisonment in which his supply of drugs might be cut off. These are special circumstances which you may consider in weighing testimony of this kind. You of course may give the testimony such weight as you think proper, after considering all relevant circumstances." Devitt and Blackmar, § 17.03.

is also affected by this factor and the trial judge would be wise to incorporate such a concept into the jury instructions he gives in a new trial.

### III. *Government Failure to Preserve Evidence.*

Agent Fredericks was the DEA Agent who investigated the case and interviewed May in preparation for his becoming an informant and ultimately testifying against Comstock and his co-defendant Bernard. A pretrial motion was made to obtain any exculpatory material and any prior statements of witnesses. No statement of May was ever received. Upon cross-examination, when asked why he had never reduced May's statement to writing, Agent Fredericks said:

> Normally in interviewing either an informant or a defendant over a period of time, a lot of times the facts will differ from one interview to the next; under legal guidelines, any notes which the agent or interviewer makes, the defense deserves to have those notes, so in trying to avoid contradicting facts from the interview of any defendant or any informant, it is my policy not to write down anything until I am sure the defendant or informant knows exactly what he is saying, and at that time I will make a report, or dictate a report on an IBM dictaphone and have that transcribed. That is to prevent any problems of getting into court and having contradictions from for instance an interview in March with an interview in July, with an interview in August, with an interview in September, and having the defense counsel come back and say "Well, did you say this differently at this time?" That is the purpose of my not taking notes.

The defense sought to dismiss the action based upon the deliberate efforts of Agent Fredericks to thwart discovery under the Jencks Act, 18 U.S.C. § 3500; F.R.Crim.Pro. 16; and *Brady v. Maryland*, 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. Agent Fredericks also disposed of a tape of a conversation between Comstock and an informant because, in his opinion, it was unintelligible, and failed to keep the photographs used for identification purposes at Garrett Freight Lines.

We emphatically disapprove of Agent Fredericks' views and motivation, and his conduct. His testimony announces a desire to deprive defendants of knowledge of any statements favorable to them that may have been made to him by the informant. This seems to us to be quite inconsistent with the obligations of a law enforcement officer representing the United States Government. Such an officer has a duty to gather all of the facts about an offense, so far as time and his abilities permit, not just those facts that the agent thinks helpful to obtaining a conviction. His superiors and the prosecuting authorities must rely on him to do so. Both he and they have a duty to protect the innocent as well as to catch and prosecute the guilty. And that duty extends to being fair to those whom he may believe to be guilty. Playing games with evidence, as Agent Fredericks has done, demeans him, his agency, and the government itself.

However, we can find no statutory basis for compelling the creation of Jencks Act material. The Jencks Act requires the prosecution to produce "written statements" of various types or their equivalent, 18 U.S.C. § 3500(b), (e). The purpose of the Act was to make any *existing* prior statements made by a government witness equally available to the defense and the prosecution. *See United States v. Cruz*, 5 Cir., 1973, 478 F.2d 408, 411. Descriptions of interviews with witnesses that are not "substantially verbatim" are not discoverable under the Jencks Act. 18 U.S.C. § 3500(e). *See Palermo v. United States*, 1959, 360 U.S. 343, 352–353, 79 S.Ct. 1217, 1224–1225, 3 L.Ed.2d 1287. We cannot read into this requirement a further requirement that the government create such discoverable statements in the first instance. *Accord, see United States v. Short*, 9 Cir., 1974, 493 F.2d 1170, 1173; *United States v. Jackson*, 9 Cir., 1971, 448 F.2d 963, 971–972. *See also United States v. Lieberman*, 1 Cir., 1979, 608 F.2d 889, 896–897; *United States*

*v. Head,* 5 Cir., 1978, 586 F.2d 508, 511–512; *United States v. Cruz, supra.* Nor can we find a constitutional basis for compelling the creation of such material under *Brady. United States v. Sukumolachan,* 9 Cir., 1980, 610 F.2d 685, 687. *See also Reyes v. United States,* 9 Cir., 1969, 417 F.2d 916, 918. The motivation of Agent Fredericks would be irrelevant in such an inquiry. *United States v. Agurs,* 1976, 427 U.S. 97, 110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342; *Brady v. Maryland, supra,* 373 U.S. at 87, 83 S.Ct. at 1196.

■ We do not think that the conduct of Agent Fredericks aids the courts in the search for truth or in the conduct of fair trials, and we hope that such conduct does not become the policy of government investigating agencies. However, as much as we disapprove of that conduct, it is not reversible error here.

■ Even if the failure to produce the photographs and tape at trial was error, such error was harmless to Comstock. None of the employees at Garrett Freight Lines were able to identify Comstock from the photos which were destroyed. Nor does Comstock present any reason for us to think that the material on the tape was exculpatory. Comstock was not prejudiced by the failure to produce these pieces of evidence.

## IV. *Refusal to Subpoena Medical Expert.*

The defense requested an indigent subpoena under F.R.Crim.Pro. 17(b) to require a Dr. Gregory Nail to testify as an expert witness concerning the effect of drug use by May on his perceptions at the time of the drug usage as well as on his memory at the time of trial. The defense offered to prove that Dr. Nail would testify, based upon a hypothetical question rather than on an examination of May, that, in light of May's drug history, his judgment, ability to perceive reality, memory and accuracy of perception would be impaired, unreliable and inaccurate both at the time of the events described and at trial. He would also have testified that the ability of May to recall at the time of trial the events described would be similarly impaired. An adequate foundation was presented showing Dr. Nail's qualifications to testify on these subjects. The district court refused to issue the subpoena because the testimony would not aid the jury in weighing the issues in the case and indicated that even if the witness had been called at the defendant's expense, he would grant the government motion to exclude the testimony.

■ Whether to admit the type of testimony offered here is a decision left to the discretion of the trial judge, and we will not overturn his decision in the absence of an abuse of such discretion. *See United States v. Demma,* 9 Cir., 1975, 523 F.2d 981, 986–987; *United States v. Barnard,* 9 Cir., 1973, 490 F.2d 907, 912. Here, May testified at length as to his ability to perceive the events he testified to and his ability to recall those events, all in a manner certain to result in the jury questioning his credibility. The expert witness, on the other hand, would testify only to hypothetical impairment of memory and perception. It was not an abuse of discretion for the trial judge to refuse to subpoena Dr. Nail.

## V. *Failure to Suppress Radio Transmitter Evidence.*

The defense moved to suppress any and all evidence obtained from the DEA's installation of the beeper and surveillance aided by the beeper. The motion was denied. Defendants claim that the installation of the beeper and the subsequent surveillance violated their Fourth Amendment rights to privacy. They claim that it was therefore error for the district judge to refuse to suppress the testimony of Agent Fredericks regarding the location of the can and the testimony of Wakefield to whom the DEA was led by the beeper.

■ The beeper was attached to the can while the can was in the custody of the DEA. The can was then delivered to the Supply House. No Fourth Amendment right of Comstock was violated when the device was installed. *See United States v. Pretzinger,* 9 Cir., 1976, 542 F.2d 517, 520. Nor did the continued surveillance by the

device violate Comstock's reasonable expectation of privacy. In *United States v. Dubrofsky*, 9 Cir., 1978, 581 F.2d 208, 211, we said:

> The issue before us is whether the mere presence of the beeper, it having been attached without violating the Fourth Amendment, sufficiently resembles a wiretap to require the "antecedent justification" that a warrant would provide. We hold that it does not.

*Dubrofsky* is controlling here, and thus we need not decide whether the testimony of Wakefield would have been admissible under *United States v. Ceccolini*, 1978, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268, even if the beeper installation constituted an illegal search.

#### VI. *Bernard's Special Parole Term.*

Bernard was charged with violating 21 U.S.C. § 846, and in sentencing him, the court imposed the special parole term provided for in § 841(b)(1)(B). Bernard claims that it was error to impose the special parole term. Because we are reversing, we need not consider this question. The Supreme Court has now decided the question in Bernard's favor. *Bifulco v. United States*, 1980, —— U.S. ——, 100 S.Ct. 2247, 64 L.Ed.2d —— (1980).

The judgments are reversed and the case is remanded for further proceedings.

WALLACE, Circuit Judge, concurring:

While I concur generally with the majority, I add a cautionary note. May, who testified against Bernard and Comstock, was an accomplice to their activities, a paid informant for the government, and a drug addict. Part II of the majority opinion suggests that it would have been "better" for the district judge to give a jury instruction mentioning all of these characteristics of May and suggesting that each might affect his credibility. I agree that in certain cases, such an instruction might be appropriate. But, I caution that our comments should not be construed to require the giving of such an instruction in this or any other case. The formulation of jury instructions is a matter within the discretion of the trial judge and, in my judgment, the majority's suggestion should not circumscribe the exercise of that discretion.

It appears to me that we best carry out our appellate function by determining whether it was error to give or not to give a particular jury instruction in a particular case. Advice as to a "better practice" seems to me to be ordinarily outside our appellate responsibility. Prudence urges awaiting a concrete controversy on the particular issue.