94 F.3d 653
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leonard COOPER and Tanya Cooper, Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
A.C. ALLEN, Defendant-Appellant.
 No. 95-50435, 95-50483, 95-50473.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 4, 1996.*
Decided Aug. 22, 1996.
 
 1
 Before: BRUNETTI and RYMER, Circuit Judges, and TANNER,** District Judge.
 
 
 2
 MEMORANDUM***
 
 OVERVIEW
 
 3
 Following a joint jury trial, Leonard Cooper (95-50435) appeals his convictions and sentence under the Sentencing Guidelines for conspiracy, unlawful food stamp acquisition, unlawful presentation of food stamps for redemption, and false statement. A.C. Allen (95-50473) appeals his conviction for conspiracy; and Tanya Cooper (95-50483) appeals her convictions for conspiracy and unlawful food stamp acquisition. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 DISCUSSION
 I. LEONARD COOPER
 A. Federal Rule of Evidence 901
 
 4
 A district court's evidentiary rulings are reviewed for an abuse of discretion, United States v. Rubio-Topete, 999 F.2d 1334, 1338 (9th Cir.1993), as are its rulings regarding the sufficiency of authentication and identification. United States v. Blaylock, 20 F.3d 1458, 1462 (9th Cir.1994).
 
 
 5
 Defendant objected to the admission of testimony by Ana Casas, a United States Department of Agriculture Food & Nutrition program specialist, who testified concerning the food stamp redemption rates of A Cut Above, as compared to similarly-situated stores in the neighborhood. Defendant contends that Casas' testimony lacked foundation, and therefore reliability and trustworthiness. Casas' testimony was offered to show that defendant's percentage of food stamp redemptions were out of proportion with the norm, with the inference being that defendant's food stamp redemptions were unlawful.[4] Defendant argues that the sample of stores in the comparison was too small, and was not truly representative of the universe of specialty meat stores.
 
 Federal Rule of Evidence 901(a) provides:
 
 6
 The requirement of authentication as a condition precedent to admissibility is satisfied by sufficient evidence to support a finding that the matter in question is what its proponent claims.
 
 
 7
 In laying a foundation, Appellants must establish "evidence describing a process or system used to produce ... an accurate result." Fed.R.Evid. 901(b)(9).
 
 
 8
 Casas laid an appropriate foundation by testifying as to the method used by the Food and Nutrition Services Department to maintain records regarding food stamp redemptions; the statistical factors used; and the search of the records which generated a list of comparable stores. Casas' sample was limited to those six stores within A Cut Above's zip code which were comparable in size, number of employees, number of cash registers, store hours, and the type of merchandise sold. The district court found that the sample was neighborhood-intensive and comparable-intensive. Defendant's contention that some meat specialty stores did have gross business meat sales in excess of $500,000 over a 12-month period is not supported by the record. The district court did not abuse its discretion in admitting this testimony.
 
 B. Jury Instructions
 
 9
 Defendant argues that the trial court erred in failing to instruct the jury that the government must prove beyond a reasonable doubt that Defendant had knowledge of the specific regulation that prohibited the acceptance of food stamp coupons in exchange for cash.[5]
 
 
 10
 In Liparota v. United States, 471 U.S. 419 (1984), the Supreme Court stated:
 
 
 11
 We hold that in a prosecution for violation of § 2024(b)(1), the Government must prove that the defendant knew that his acquisition or possession of food stamps was in a manner unauthorized by statute or regulations.... [but] the Government need not show that he had knowledge of specific regulations governing food stamp acquisition or possession.
 
 
 12
 Id. at 433-34.
 
 
 13
 Defendant argues that the legal requirement of actual knowledge is "a natural extension of the United States Supreme Court's decision" in Ratzlaf v. United States, 114 S.Ct. 655, 657-58 (1994). We decline to expand Liparota's holding to impose such a burden of proof on the government. The district court did not abuse its discretion in refusing to instruct the jury as requested by defendant.
 
 C. Sentencing Guidelines
 
 14
 The district court's interpretation of the sentencing guidelines is reviewed de novo. United States v. Blaize, 959 F.2d 850, 851 (9th Cir.), cert. denied, 112 S.Ct. 2954 (1992). We review the district court's factual findings underlying a sentencing determination for clear error. United States v. Nazifpour, 944 F.2d 472, 474 (9th Cir.1991) (per curiam).
 
 1. loss calculation
 
 15
 Defendant argues that the probation officer's loss calculation of $466,144.00 under Guidelines section 2F1.1(b)(1), was erroneous and that the appropriate loss amount is $233,070, with the loss restricted to the actual profit received by defendant.[6]
 
 
 16
 The $466,144.00 figure represents the full face value of the food stamps unlawfully received by the Defendant's business between June of 1993 and February of 1994. Defendant's argument that upon redemption, the government was only being defrauded of fifty percent of the face value of the food stamps is unpersuasive.
 
 
 17
 The guidelines provide: "[I]n a case involving diversion of government program benefits, loss is the value of the benefits diverted from intended recipients or uses." U.S.S.G. § 2F1.1, comment. n. 7(d). See United States v. Niven, 952 F.2d 289, 291 (9th Cir.1991) (per curiam) (the amount of loss need not be precise ... the court need only make a reasonable estimate of the range of loss). Thus, the benefits diverted from the intended recipients is the full face value of the stamps. The district court's findings as to loss were not clearly erroneous.
 
 2. Role in Offense
 
 18
 Guideline section 3B1.1(a) provides that a defendant receive a four level upward adjustment if he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."
 
 
 19
 Defendant contends that in determining whether the offense was "otherwise extensive", the district court engaged in impermissible double-counting by using the same factor--that defendant's scheme involved multiple offenses over a nine month period--in order to increase defendant's offense level under § 2F1.1(b)(2) for more than minimal planning, and under § 3B1.1(a) for role in the offense.
 
 
 20
 First, Defendant's scheme was "otherwise extensive" not because it involved multiple offenses over a nine-month period, as Defendant claims, but because it involved numerous individuals and used the unknowing services of many outsiders, resulting in a substantial amount of loss over that time period. Addendum to Presentence Report at 2. This basis for enhancement was recognized in United States v. Mullins, 992 F.2d 1472, 1479 (9th Cir.1993) (upholding four-level increase for role in offense because defendant recruited accomplices for a scheme that had at least three participants and used the services of many outsiders); and United States v. Roberts, 5 F.3d 365, 371 (9th Cir.1993) (fraud involving only 3 participants but using the unknowing services of many outsiders could be considered extensive).
 
 
 21
 Second, we have held that when separate enhancements address sufficiently different concerns, applying both does not constitute double-counting. United States v. Kelly, 993 F.2d 702, 705 (9th Cir.1993). The four-level increase is appropriate.[7]
 
 3. Abuse of Trust
 
 22
 Defendant argues that the district court erroneously increased his offense level by two points for abuse of trust.
 
 
 23
 A defendant's offense level is increased by two levels "[i]f the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense ..." U.S.S.G. § 3B1.3. Defendant's attempt to equate his crime to ordinary theft involving no special position of trust is unavailing. The abuse of trust enhancement applies to fiduciary-like trust relationships of the sort described in the Sentencing Guidelines Commentary, U.S.S.G. § 3B1.3, comment. n. 1. See United States v. Hill, 915 F.2d 502 (9th Cir.1990).
 
 
 24
 The primary focus in determining an abuse of trust is on the extent to which the position provides the freedom to commit a difficult-to-detect wrong, and whether an abuse could be simply or readily noticed. Id. at 506.
 
 
 25
 As the owner and manager of an authorized food stamp retail store, Defendant had authority to accept and redeem food stamps in exchange for food provided to food stamp recipients. The government entrusted him to follow the rules and regulations of the federal food stamp program, and to submit food stamp redemption certificates to the government listing the amount of food stamps deposited. The program relied on Defendant's false representations that he had legitimately obtained the food stamps in exchange for food. Because his position gave him powers and privileges not available to the general public, Defendant was able to significantly facilitate the concealment of a difficult-to-detect crime. The district court's decision enhancing defendant's offense level for abuse of a position of trust was not clearly erroneous.
 
 II. A.C. ALLEN
 A. Accomplice Jury Instruction
 
 26
 Allen claims that the district court's refusal to give an accomplice instruction as to Sims constituted prejudicial error. In reviewing a particular instruction, this court must consider whether the jury instructions, as a whole, accurately represent the applicable law. United States v. Knott, 894 F.2d 1119, 1121 (9th Cir.1988), cert. denied, 111 S.Ct. 197 (1990).
 
 
 27
 Defendant's proposed accomplice instructions were rejected by the district court, however, the district court gave both an informer instruction and a general credibility instruction. This court has held that where the court gives a general instruction charging jurors to weigh the other evidence, the specific caution about accomplice witnesses may not be required. United States v. McSweaney, 517 F.2d 298, 301 (9th Cir.1974). Furthermore, failure to give an instruction combining the reasons for greater caution regarding witness credibility is not, by itself, reversible error. United States v. Bernard, 625 F.2d 854, 857-58 (9th Cir.1980). There is no significant difference between a cautionary instruction on the testimony of an accomplice and a cautionary instruction on an informant. Both instruct the jury that the testimony "be received with caution and weighed with care." Id. at 858, quoting United States v. Morgan, 555 F.2d 238, 242-43 (9th Cir.1977).
 
 
 28
 Failure to give the accomplice instruction may be prejudicial error when other, corroborating evidence is weak and the determination of guilt rests largely on the accomplice's testimony. Id. However, that is not this case. Sims' testimony was corroborated by various tape-recorded conversations between Sims and T. Cooper, L. Cooper and Allen. Additionally, bank and food stamp records were introduced to show that L. Cooper redeemed far more food stamps than his store sold food. Thus, the government's case did not rest primarily on Sims' testimony.
 
 
 29
 Viewed as a whole, the court's general credibility and additional cautionary instruction on informer testimony made defendant's accomplice witness instruction unnecessary. The district court did not err in failing to give defendants' proposed accomplice instruction.
 
 III. TANYA COOPER
 A. Accomplice Jury Instructions
 
 30
 Defendant advances the same argument and rationale as co-defendant A.C. Allen in claiming that it was reversible error for the district court to deny defendant's proposed accomplice jury instruction. We reject Defendant's argument on the same grounds. See Allen, supra at 9.
 
 B. Sufficiency of Evidence
 
 31
 Defendant contends that the evidence is insufficient to prove that she knew that the $930 in food stamps delivered to the meat store by Sims on March 5, 1994 had been purchased by Sims, or that she knew Sims' acquisition was illegal.
 
 
 32
 The test for sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). This court "must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict." United States v. Gillock, 86 F.2d 220, 222 (9th Cir.1989) (citations omitted).
 
 
 33
 7 U.S.C. § 2024(b)(1) provides in pertinent part:
 
 
 34
 whoever knowingly uses, transfers, acquires, alters or possesses [food stamp] coupons ... in any manner contrary to this chapter or the regulations issued pursuant to this chapter, shall, if such coupons ... are of a value of $100 or more ... be guilty of a felony ...
 
 
 35
 The evidence belies Defendant's claimed lack of knowledge. First, the government has the tape-recorded conversation between Sims and Cooper. The exchange between Defendant and Sims indicates that she was not ignorant of what was going on. During that conversation, Defendant indicated that she was going to 'check in' Sims; Sims told Defendant that L. Cooper sent him out with five hundred dollars and that he was getting food stamps at 40 cents on the dollar. From this the jury could infer that Defendant knew Sims was purchasing stamps at a cash discount, which is unlawful. Sims also stated that he was doing well because the purchasers were "smokers", an obvious reference to crack users. When told by Sims that his spot for selling stamps was right across from the federal building, defendant responded, "they don't even be paying attention, they just know what's going on." Sims continued discussing selling food stamps, and was admonished by defendant not to let anyone see him "put them books up ... so they won't get 'em."
 
 
 36
 Defendant's protestations that she had no knowledge of the food stamp regulations are no more persuasive than were Leonard Cooper's. It is not necessary that the government prove the defendant's knowledge of specific regulations governing food stamp acquisition or possession. Liparota, 471 U.S. 419 at 434. It is sufficient if the government proves defendant's knowledge by reference to facts and circumstances surrounding the case. Id.
 
 
 37
 Viewing the evidence in a light most favorable to the government, a rational trier of fact could conclude that Tanya Cooper had knowledge that Sims', and therefore her own acquisition of food stamps was "in a manner unauthorized by statute or regulation."
 
 C. Cross-examination of Agent Gossard
 
 38
 Defendant argues that the district court abused its discretion in curtailing defendant's cross-examination of Agent Gossard and violated his Sixth Amendment right of confrontation.
 
 
 39
 The district court's decision to limit the scope of cross-examination is reviewed for an abuse of discretion, United States v. Perkins, 937 F.2d 1397, 1405 (9th Cir.1991), as are its rulings on the relevancy of evidence. United States v. Daly, 974 F.2d 1215, 1216-17 (9th Cir.1992).
 
 
 40
 The trial court sustained the government's relevancy objection to defense cross-examination of Agent Gossard during which counsel sought to elicit testimony that specialized training, expertise and an opportunity to review pertinent documents, which Tanya Cooper lacked, was necessary to enable her to analyze the factual data on food stamp redemption rates offered by the government.
 
 
 41
 As the government points out, the inability or lack of opportunity to perform complicated data analysis does not preclude defendant from being aware of food stamp trafficking. The district court determined appropriately that the inquiry lacked relevance because the government did not seek to prove that defendant had a duty to perform such a business analysis. The district court did not abuse its discretion in restricting cross-examination. The judgments and sentences of the district court are AFFIRMED as to all defendants.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Circuit Rule 34-4
 
 
 **
 Honorable Jack E. Tanner, Senior United States District Judge, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts except as provided by 9th Cir.R. 36-3
 
 
 [4]
 Casas testified that the percentage of food stamp purchases made in comparable stores in defendant's neighborhood was between 30 and 35% of gross food sales. In contrast, A Cut Above's food stamp redemption rate was 1,100% of food sales
 
 
 [5]
 7 C.F.R. § 27.2(a) states:
 Coupons may be accepted by an authorized retail food store only from eligible households or the households' authorized representative, and only in exchange for eligible food. Coupons may not be accepted in exchange for cash, except when cash is returned as change in a transaction in which coupons were accepted in payment for eligible food under paragraph (d) of this section.
 
 
 [6]
 The reduced figure would call for an increase in Defendant's offense level of eight, rather than nine
 
 
 [7]
 Because the enhancement is clearly proper on an "otherwise extensive" basis, we need not reach the question whether an enhancement is appropriate on the "five participants" basis