Kevin Wayne METCALF, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2003–SC–0098–MR.

Supreme Court of Kentucky.

Jan. 20, 2005.

As Modified of Denial of Rehearing
April 21, 2005.


Dennis L. Null, Daniel C. Thomas, Null, Thomas, Samson & Paitsel, Mayfield, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Michael Harned, Carlton S. Shier, Assistant Attorneys General, Office of the Attorney General, Frankfort, Counsel for Appellee.

COOPER, Justice.

A McCracken Circuit Court jury convicted Appellant, Kevin Wayne Metcalf, of one count of sodomy in the first degree, KRS 510.070, and one count of sexual abuse in the first degree, KRS 510.110. The trial court sentenced him to twenty years imprisonment for the sodomy conviction and one year imprisonment for the sexual abuse conviction. Appellant appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), asserting the following claims of error: (1) admission of uncharged acts in violation of KRE 404(b) and (c); (2) denial of his motion to suppress his confession; (3) improper interpretation by witnesses of inaudible portions of his audiotaped confession; (4) destruction of exculpatory evidence by the Commonwealth; (5) release of a subpoenaed witness by the Commonwealth without Appellant's consent; and (6) the Commonwealth's recall of two witnesses for rebuttal purposes during its case-in-chief. We reverse and remand this case for a new trial because of the improper admission of evidence of uncharged crimes. We will address those additional claims of error that are likely to recur upon retrial. *Springer v. Commonwealth*, 998 S.W.2d 439, 445 (Ky. 1999).

Appellant's convictions of sexual abuse and sodomy stem from allegations that he fondled and licked the vagina of his stepdaughter, C.I. The investigation began in

September 2001 when Stacey Albritton of the Cabinet for Families and Children received a complaint that Appellant had videotaped another stepdaughter, S.K., while she was undressing. Albritton and Kentucky State Police Detective Sam Steger went to Appellant's residence and interviewed S.K., who related that Appellant took her upstairs and videotaped her as she removed all of her clothing except her panties. Albritton and Steger then interviewed C.I. and H.K., another stepdaughter. C.I. stated that during the Christmas holidays in 2000, Appellant carried her, kicking and screaming, to a trailer behind the home, and that once inside the trailer, he lifted her dress, touched her genitals, and then licked them, while restraining her. H.K. stated that while on a bicycle trip with Appellant, Appellant stopped to urinate and exposed his penis to her. All of the children were under twelve years old when these incidents occurred.

Steger and Albritton interviewed Appellant at the Department of Social Services ("DSS") office. When Appellant did not provide any useful information, Steger offered to conclude the interview. At trial, Steger, Albritton, and two social workers, who were watching the interview through a two-way mirror for training purposes, testified that Appellant then broke down crying, admitted to all the allegations, and referred to himself as a "sick bastard." He was placed under arrest.

The Commonwealth sought indictments for all three incidents, but the grand jury indicted Appellant only for the sexual abuse and sodomy of C.I. At trial, C.I., S.K., and H.K. all recanted their allegations, stating that they had jointly fabricated them to "scare" Appellant so that he would stop drinking. They explained that C.I.'s father had beaten them when drunk and that they thought of the sexual abuse

allegations because another relative had recently been jailed for sexually abusing his child and Appellant would be "scared" that the same thing would happen to him.

## I. UNCHARGED ACTS.

Appellant made a pretrial motion *in limine* to exclude any evidence of his inappropriate sexual conduct involving S.K. and H.K. Appellant specifically sought to exclude testimony regarding the videotaping of S.K., the indecent exposure to H.K., and another allegation by H.K. that he induced her to watch a pornographic movie with him. The prosecutor conceded that the pornographic movie incident was inadmissible. The trial court agreed that the indecent exposure evidence should be excluded as irrelevant, but ruled that evidence of Appellant's videotaping of S.K. was admissible under KRE 404(b)(2) because it explained why Albritton and Steger had gone to Appellant's residence and interviewed C.I. During trial, however, the court ruled that evidence elicited during cross-examination of H.K. by defense counsel "opened the door" to admission of both the indecent exposure evidence and the pornographic movie evidence.

### A. Preservation.

■ The Commonwealth asserts that these issues were not preserved for appellate review because they were inadequately preserved at trial. The *in limine* rulings were made on the morning of trial, and defense counsel did not further object during trial to the evidence of the videotaping of S.K. However, defense counsel did argue at trial that his cross-examination of H.K. had not "opened the door" for admission of evidence of the indecent exposure and pornographic movie. Because the issues were properly preserved by the *in limine* motions, we need not address whether defense counsel failed to preserve the issue because he did not specifically

state, "I object." The Commonwealth cites *Tucker v. Commonwealth*, 916 S.W.2d 181, 183 (Ky.1996), for the proposition that the motion *in limine* was insufficient to preserve these issues for review. This argument ignores an entire sentence in KRE 103(d), which states, "A motion in limine resolved by order of record is sufficient to preserve error for appellate review." As explained in *Davis v. Commonwealth*, 147 S.W.3d 709, 722–23 (Ky.2004), *Tucker* applies when the motion *in limine* is directed at a general area of inquiry, sometimes referred to as a "class of evidence," Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 1.10[3][f], at 36 (4th ed. LexisNexis 2003), not a particular evidentiary fact. Appellant's motion *in limine* and the trial court's rulings thereon covered testimony regarding particular evidentiary facts and thus properly preserved all three of these issues for appellate review.

### B. Notice.

Appellant asserts that he did not receive notice of the Commonwealth's intent to introduce these uncharged acts as required by KRE 404(c). However, the Commonwealth included this information in its bill of particulars. RCr 6.22. *See Hayes v. Commonwealth*, 58 S.W.3d 879, 881 (Ky. 2001) ("The Commonwealth provided notice in its Bill of Particulars that it planned to introduce [appellant's] three-year-old misdemeanor conviction ..."). Further, the purpose of KRE 404(c) is to provide the defendant an opportunity to challenge the admission of the evidence. *Tamme v. Commonwealth*, 973 S.W.2d 13, 31 (Ky. 1998). The fact that Appellant filed a motion *in limine* to suppress the evidence is proof that he was not prejudiced by a failure to receive formal notice. *Soto v. Commonwealth*, 139 S.W.3d 827, 859 (Ky. 2004); *Bowling v. Commonwealth*, 942 S.W.2d 293, 300–01 (Ky.1997).

### C. "Inextricably intertwined."

■ "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." KRE 404(b). Appellant asserts that evidence of the videotaping of S.K., the indecent exposure, and the pornography incident, was admitted only to show his "lustful inclination," *i.e.*, that he was the type of person who would likely molest C.I. *See Pendleton v. Commonwealth*, 685 S.W.2d 549, 552 (Ky.1985) ("[N]o evidence is admissible to show 'lustful inclination.'"). The Commonwealth does not assert that the acts were so similar to the charged offenses as to establish, *e.g.*, motive or identity through evidence of *modus operandi*. KRE 404(b)(1); *Billings v. Commonwealth*, 843 S.W.2d 890, 893 (Ky.1992). Rather, the trial court admitted the videotaping evidence under KRE 404(b)(2) because the evidence explained why Steger and Albritton came to Appellant's residence to interview his children, reasoning that it was, therefore, "so inextricably intertwined" with the charged offense that its exclusion would seriously adversely affect the Commonwealth's ability to present its case. However, as we noted in *Funk v. Commonwealth*, 842 S.W.2d 476 (Ky.1992):

> [T]he key to understanding this exception is the word "inextricably." The exception relates only to evidence that *must come in* because it "is so interwoven with evidence of the crime charged that its *introduction is unavoidable*."

*Id.* at 480 (emphasis added) (quoting Lawson, *The Kentucky Evidence Law Handbook*, § 2.20, at 37 (2d ed.1984)). *See also Fleming v. Commonwealth*, 284 Ky. 209, 144 S.W.2d 220, 221 (1940) (evidence is inextricably intertwined where "two or more crimes are so linked together in point of time or circumstances that one

cannot be fully shown without proving the other").

It would have been a simple matter for Steger and Albritton to truthfully testify that they came to Appellant's residence to investigate an allegation of child abuse without mentioning the uncharged videotaping incident. "Patently this is not a case where it would be necessary to suppress facts and circumstances relevant to the commission of the offense charged [sodomy and sexual abuse of C.I.] in order to exclude evidence of the prior offense [videotaping of S.K.]." *Funk,* 842 S.W.2d at 480. *See also Scamahorne v. Commonwealth,* 357 S.W.2d 30 (Ky.1962) (conviction for carrying a concealed deadly weapon discovered during service of arrest warrant reversed because of admission of evidence that the warrant was for a charge of bank burglary).

As Professor Lawson warns, KRE 404(b)(2) "poses a special threat to the law's overriding objective of protecting defendants against the prejudice that is inherent in evidence of other crimes." Lawson, *supra,* § 2.25[4][c], at 139.

> "In practice, ... this expanded idea of contextual relevance often paves the way to prove acts that are anything but inseparable [from] the charged crime, and this label can easily become a catchall for admitting other acts that are far more prejudicial to the defendant than useful in determining guilt of the charged offense."

*Id.* (quoting 1 Mueller & Kirkpatrick, *Federal Evidence* § 111) (2d ed.1994).

The specter that misuse of KRE 404(b)(2) will lead to the introduction of prejudicial collateral facts is embodied by what happened in this case. At trial, the Commonwealth not only elicited from Steger and Albritton that they had gone to Appellant's residence to investigate an allegation that Appellant had videotaped S.K. undressing, but also (1) elicited from Steger, Albritton, and the two social workers who were watching through the two-way mirror that Appellant confessed to videotaping S.K. and to having destroyed the videotape by burning it on a burn pile in his back yard (Steger even introduced photographs of the burn pile); and (2) elicited from S.K. that she had told Steger and Albritton, as well as Barbara Driskill, clinical director of Child Watch Advocacy Center, that Appellant had videotaped her undressing. During the *in limine* hearing, both the prosecutor and the defense counsel admitted knowing that, if asked, S.K. probably would recant her accusation and claim that the incident had not occurred. After S.K. did, in fact, recant during direct examination by the prosecutor, the Commonwealth impeached her recantation by recalling Steger and Albritton to provide details of what S.K. had told them about the incident, and by calling Barbara Driskill as a witness to testify that S.K. had twice told her about the incident, including that Appellant paid her ten dollars to remove her clothing.

Even if Steger's and Albritton's initial testimony that they went to the Metcalf residence to investigate the videotaping incident had been admissible under KRE 404(b)(2) (it was not), neither Appellant's confession to committing the act[1] nor S.K.'s testimony about it was "inextricably intertwined" with the charged offense. The exclusion of Appellant's confession

---

**1.** The Commonwealth asserts that Appellant's confession to the videotaping incident was admissible to rebut his claim that his confession consisted only of "yes" and "no" answers to leading questions by his interrogators. However, Appellant only raised this claim at the pretrial suppression hearing. Appellant did not testify at trial, so there was no such claim to rebut.

and S.K.'s testimony about the videotaping incident would not have required suppression of any facts and circumstances relevant to the charged sodomy and sexual abuse of C.I. *Funk,* 842 S.W.2d at 480. And, of course, absent S.K.'s testimony and subsequent recantation, there would have been no basis at all for the admission of S.K.'s prior inconsistent statements under KRE 801A(a)(1). In fact, it is doubtful that S.K.'s recantation opened the door for the rebuttal evidence since she admitted having told Steger and Albritton the story about the videotaping but claimed at trial that she had lied to them.

Further, the videotaping incident was a collateral fact, and although there is no provision in the Kentucky Rules of Evidence prohibiting impeachment on collateral facts, we have consistently recognized that prohibition as a valid principle of evidence. *Purcell v. Commonwealth,* 149 S.W.3d 382, 397–98 (Ky.2004); *Neal v. Commonwealth,* 95 S.W.3d 843, 849 (Ky. 2003); *Slaven v. Commonwealth,* 962 S.W.2d 845, 858 (Ky.1997); *Eldred v. Commonwealth,* 906 S.W.2d 694, 705 (Ky.1994), *abrogated on other grounds by Commonwealth v. Barroso,* 122 S.W.3d 554, 563–64 (Ky.2003). Professor Lawson suggests that the KRE 403 balancing test, *i.e.,* weighing the probative value of the impeachment against the prejudicial effect of the evidence and its possible confusion of issues, resolves the issue more properly than a distinction between collateral and non-collateral facts. Lawson, *supra,* § 4.05[3], at 276. It would be a rare occurrence, we think, when the prejudicial effect of evidence of "other bad acts" would not substantially outweigh the impeachment value of such evidence, and this case is not that rare occurrence.

The videotaping evidence was, therefore, essentially proof of Appellant's bad moral character by evidence of a specific instance of conduct. The prosecutor may introduce evidence of the accused's bad character only to rebut evidence of the accused's good character—which had not been introduced at the time of S.K.'s testimony. KRE 404(a)(1). And character evidence is admissible only in the form of reputation or opinion, not specific instances of conduct, where, as here, character is not an essential element of a charge, claim, or defense. KRE 405.

### D. "Opening the door."

▮ As noted, the trial court sustained Appellant's *in limine* motion to exclude evidence that he indecently exposed himself to H.K., and the prosecutor conceded that the pornographic movie evidence was inadmissible. After C.I. recanted her accusation that Appellant had sodomized and sexually abused her, the Commonwealth called H.K. as a witness to testify that C.I. had previously told her about the sodomy and sexual abuse. On cross-examination, the following colloquy occurred between defense counsel and H.K.:

Q. During the entire time that you have known him, has Kevin Metcalf ever committed any improper touch or act upon you?

A. No.

The trial court held that this question and answer "opened the door" to the admission of the indecent exposure and pornography evidence. When H.K. recanted those accusations, the Commonwealth introduced into evidence a written statement that H.K. had given to her biological father, which included those allegations. Although H.K. admitted that she had also made the same allegations to Steger and Albritton, the trial court allowed the Commonwealth to recall Steger and Albritton to repeat that H.K. had described the two incidents to them. Bridget Fralee, another social worker, also testified that H.K. had described the two incidents to her.

The allegations of indecent exposure and exposure to pornography were collateral facts and what was said *supra*, in Part I–C, about impeachment on a collateral fact applies to these incidents just as it does to the videotaping incident. As for "opening the door," the trial court presumably was referring to the doctrine of "curative admissibility," *i.e.*, when one party introduces improper evidence, such "opens the door" for the other party to introduce improper evidence in rebuttal whose only claim to admission is that it explains or rebuts the prior inadmissible evidence. *Norris v. Commonwealth*, 89 S.W.3d 411, 414 (Ky. 2002); Lawson, *supra*, § 1.10[5], at 43. *See Johnson v. Commonwealth*, 105 S.W.3d 430, 441–42 (Ky.2003) (daughter's statement that she had never seen her father with drugs was impermissible character evidence and permitted admission of evidence that her father had previously pled guilty to drug trafficking). Here, however, it was the Commonwealth that opened the door for H.K.'s arguably improper evidence of Appellant's "good character" by using the videotaping incident as evidence of his bad moral character.

The introduction and continuous reintroduction of inadmissible and highly prejudicial evidence of these other uncharged acts requires reversal for a retrial.

## II.  CONFESSION.

### A.  *Brady Issues.*

■■■ Steger unsuccessfully attempted to record Appellant's confession. When he later tried to replay the audiotape, he discovered that it was inaudible. He sent the tape to the Kentucky State Police laboratory to see if any portions of the interview could be recovered. Unfortunately, the laboratory could not recover the interview and concluded that the tape's inaudibility most likely resulted from battery failure. Claiming that the Commonwealth failed to preserve exculpatory evidence, Appellant made a pretrial motion to suppress his confession. While the trial court overruled the motion, it later granted Appellant's request for a "missing evidence" jury instruction. The instruction provided:

> The Commonwealth has lost or destroyed evidence involved in this case, specifically a[n] audiotape and notes from an interview. In your deliberations, you may infer, but you are not required to infer, that this evidence, if available now, would be favorable to the Defendant's case.

Appellant now challenges the testimony regarding his confession for the same reasons set forth in his pretrial motion. He claims that he was "forcefully spoon-fed portions of his statement," and that absent the audiotape or his decision to waive his Fifth Amendment right not to testify, he had no way to refute the Commonwealth's account of his confession.

■■■ While Appellant may have faced a dilemma, such would not require suppression of evidence of his confession. Under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), a criminal defendant's right to due process prohibits the government from withholding material exculpatory evidence, in good or in bad faith. *Id.* at 87, 83 S.Ct. at 1196–97. Exculpatory evidence meets the materiality requirement only if it would have affected the outcome of the trial. *United States v. Bagley*, 473 U.S. 667, 674–75, 105 S.Ct. 3375, 3379, 87 L.Ed.2d 481 (1985). In the context of a failure to preserve exculpatory evidence, the defendant must show that the government acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988); *California v. Trombetta*, 467 U.S. 479, 488, 104 S.Ct. 2528, 2533, 81 L.Ed.2d 413 (1984) (noting that defendant was unable to prove

that the government acted with animus towards him in disposing of breath samples); *United States v. Pedraza*, 27 F.3d 1515, 1527 (10th Cir.1994); *Kirk v. Commonwealth*, 6 S.W.3d 823, 826 (Ky.1999). Additionally, the exculpatory value of the evidence must have been obvious prior to its destruction, and the defendant must demonstrate an inability to obtain the evidence by other reasonable means. *Trombetta*, 467 U.S. at 489, 104 S.Ct. at 2534.

That inquiry is unnecessary here. While Appellant infers that the Commonwealth failed to preserve the audiotaped confession, the trial court found otherwise, concluding that the recording device malfunctioned and that an audible recording never existed. We will not disturb this finding of fact, as nothing in the record indicates that it was clearly erroneous, *Commonwealth v. Deloney*, 20 S.W.3d 471, 473–74 (Ky.2000), given Steger's testimony that he attempted in good faith to record the interview. Thus, we categorize the equipment malfunction as a failure to *create* evidence to corroborate a confession, rather than a failure to preserve exculpatory evidence, and we find that none of Appellant's rights under either the United States or Kentucky Constitutions were violated. *Brashars v. Commonwealth*, 25 S.W.3d 58, 60–62 (Ky.2000) (Commonwealth has no constitutional obligation to record a confession). While it would be ideal for the trial court to have perfect evidence in the form of a recording when determining the voluntariness of a confession, "we disagree ... that fundamental fairness cannot be ensured by a trial court's resolution of factual disputes regarding custodial interrogations on the basis of testimony from the persons involved." *Id.* at 62. *Cf. Pedraza*, 27 F.3d at 1526–27 (*Brady* not implicated where telephone calls were not recorded due to equipment failure, among other things); *United States v. Marashi*, 913 F.2d 724, 734 (9th Cir.1990) (*Brady* does not require prosecution to tape interviews of its witnesses; no constitutional obligation to compile *Brady* material); *United States v. Bernard*, 625 F.2d 854, 859–60 (9th Cir. 1980) (federal agent's intentional refusal to take notes of interviews so that defendant could not later discover them did not violate *Brady* ).

█ Appellant mounts a second *Brady* challenge, this time with respect to Albritton's handwritten notes taken during his interview. Albritton, who participated in Appellant's interview and heard his confession, disposed of her notes after using them to compile a report. She testified that it is office policy that investigators retain their notes only until their reports are approved, and that she had destroyed her notes after her report was approved. Appellant claims that her notes, like the audiotape, may have contained exculpatory evidence regarding his confession.

Unlike the audiotape, Albritton's notes actually existed, necessitating an inquiry under *Trombetta*, 467 U.S. at 488–89, 104 S.Ct. at 2533–34. Appellant has failed to demonstrate that Albritton disposed of her notes in bad faith. We defer to the trial court's finding that Albritton destroyed her notes as a matter of custom, rather than out of animus toward Appellant, *Deloney*, 20 S.W.3d at 473–74, and apply the United States Supreme Court's holding in *Killian v. United States*, 368 U.S. 231, 242, 82 S.Ct. 302, 308, 7 L.Ed.2d 256 (1961), later endorsed in *Trombetta*, 467 U.S. at 487, 104 S.Ct. at 2533:

> "If the agents' notes ... were made only for the purpose of transferring the data thereon ... and if, having served that purpose, they were destroyed by the agents in good faith and in accord with their normal practices, it would be clear that their destruction did not constitute

an impermissible destruction of evidence nor deprive petitioner of any right."

As in *Killian*, Albritton took notes only for the purpose of compiling an investigative report. Additionally, Appellant has failed to meet *Trombetta*'s materiality requirement because he is unable to demonstrate that he cannot obtain evidence of what occurred during the interview through other reasonable means. Four persons witnessed the interview: Albritton, Steger, and the two social workers who observed through a two-way mirror. All of those persons testified at trial and gave virtually identical accounts of what happened. *United States v. Rivera–Relle*, 333 F.3d 914, 922 (9th Cir.2003) (materiality requirement not met in case where government failed to preserve dispatch audiotape when other agents could have testified to the contents on the tape); *United States v. Parker*, 72 F.3d 1444, 1452 (10th Cir.1995) (materiality requirement not met in case of erased videotape where attendant officers could testify to what happened). All four witnesses denied that Appellant was "spoon fed" his confession and confirmed that he broke down and voluntarily confessed. Appellant's constitutional rights were not violated simply because their testimony did not agree with his desired version of the events. Finally, any possible prejudice was cured by the missing evidence instruction. *Collins v. Commonwealth*, 951 S.W.2d 569, 573 (Ky.1997) ("Giving [a missing evidence instruction] provided Appellant more than the process due.") (internal citations and quotations omitted).

*B. Commonwealth's interpretation of the audiotape.*

██ Appellant contends that testimony describing his interview violated the holding in *Sanborn v. Commonwealth*, 754 S.W.2d 534 (Ky.1988) (plurality opinion), that a party may not furnish the jury with its interpretation of an inaudible audiotape. *Id.* at 540–41. In *Sanborn*, the defense attorney disagreed with the Commonwealth's interpretation of twenty-five statements on the tape. Nevertheless, the trial court permitted the Commonwealth to furnish the jury with a written transcript of its interpretation of the inaudible tape with the Commonwealth's interpretation of the disputed portions highlighted in yellow. The trial court admitted the Commonwealth's transcript into evidence but did not allow the defendant any input. A plurality of this Court held that the trial court abused its discretion by admitting the Commonwealth's transcript into evidence. *Id.* at 540. Appellant argues that the testimony of those who observed his interview was tantamount to the Commonwealth's transcript in *Sanborn*. We disagree.

The situation here does not resemble that in *Sanborn*. Here, the court permitted the Commonwealth's witnesses to testify to what they observed, but the court did not endorse their testimony as did the trial court in *Sanborn*. Nor was Appellant denied "input;" the trial court permitted him to cross-examine all of the Commonwealth's witnesses. The witnesses were not interpreting an inaudible tape; rather, they were only relating what they, themselves, saw and heard. *Clifford v. Commonwealth*, 7 S.W.3d 371, 374 (Ky.1999).

## III. OTHER CLAIMS OF ERROR.

Appellant also raises claims that the Commonwealth improperly excused a subpoenaed witness and was improperly permitted to recall Steger and Albritton as rebuttal witnesses during its case-in-chief. We perceive no error in either instance because (1) the witness was excused by the trial court, *Anderson v. Commonwealth*, 63 S.W.3d 135, 142 (Ky.2001), and (2) "the trial judge has ... broad discretion to

control interrogation of witnesses and production of evidence and decisions made in the exercise of this discretion have not been disturbed without a clear showing of abuse and prejudice." Lawson, *supra*, § 3.20, at 238 (discussing KRE 611(a)). Regardless, these issues are mooted by the fact that this case must be retried.

Accordingly, we reverse Appellant's convictions and sentences and remand this case to the McCracken Circuit Court for a new trial in accordance with the content of this opinion.

LAMBERT, C.J.; GRAVES, JOHNSTONE, and KELLER, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion.

SCOTT, J., not sitting.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because the trial judge did not commit reversible error in admitting evidence of other uncharged acts under the circumstances of this case.

Metcalf was convicted of sodomy and sexual abuse against his then 8–year old stepdaughter. The convictions arise from allegations that he sexually abused three of his stepdaughters all of whom were under 12–years of age when the incidents occurred. Metcalf argues that it was error to admit any evidence regarding the allegations made by the other two stepdaughters. Prior to trial, Metcalf filed a motion in limine to prohibit the use of any evidence pertaining to other children. The prosecution maintained that the evidence of other allegations was admissible, pursuant to KRE 404(b)(2), and to rebut the defendant's claim that he was simply answering yes or no questions in his police interview. Ultimately, the trial judge con-

cluded that the allegations of improper videotaping made by one of the stepdaughters were inextricably intertwined with the charged acts and were therefore admissible. The trial judge also ruled that the allegations of exposure on a bicycle trip were too remote and, therefore, inadmissible.

In his opening statement and before evidence had been introduced, defense counsel commented at some length on the videotape of one of the other stepdaughters. He noted that no videotape was ever found, and consequently, indicated that the tape never existed and that the allegations were entirely fabricated by the children. When the actual evidence was introduced during trial, no objection was raised. In a trial where credibility and conflicting statements by the victim and the defendant are central to the ultimate conclusion, evidence such as presented here regarding the destruction of the videotapes was admissible to rebut the challenge by the defendant to his confession. The prosecution did not present the evidence to show character in conformity with the charged offense, but rather to rebut the claim that the confession was simply the product of convenience or pressure. The background of the videotape was thoroughly intertwined with other necessary evidence in this case. Surely, the prosecution is entitled to present a complete picture of the crime committed, including necessary background and perspective. *See Norton v. Commonwealth*, 890 S.W.2d 632 (Ky. App.1994). This Court has held that evidence of other bad acts is admissible provided it is so interwoven with other evidence that it is necessary and appropriate. *Schambon v. Commonwealth*, 821 S.W.2d 804 (Ky.1991).

In addition, there was no error in admitting evidence of the allegations of indecent exposure made by the third stepdaughter.

During cross-examination of that victim, she specifically testified that during the entire time she had known the defendant he had never acted improperly toward her or her sisters. Accordingly, the prosecution sought to introduce evidence of her allegations of indecent exposure and the trial judge allowed it, determining that the defendant had opened the door.

Fundamentally, the decision to admit or exclude evidence is left to the sound discretion of the trial judge. In reviewing such discretion, the inquiry is limited to the question of whether there was an abuse of discretion. *Commonwealth v. English*, 993 S.W.2d 941 (Ky.1999). There was no arbitrary or capricious action by the trial judge that amounted to an abuse of discretion.

I would affirm the convictions in all respects.