## State of Vermont v. Roger Gorton, Jr.

[548 A.2d 419]

No. 86-124

Present: **Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.**

Opinion Filed April 29, 1988

*Kurt M. Hughes*, Chittenden County Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Martin and Paolini*, Barre, for Defendant-Appellant.

**Gibson, J.** Defendant was convicted of sexual assault in violation of 13 V.S.A. § 3252(1)(A). We affirm.

Viewed in the light most favorable to the prevailing party, *State* v. *Jaramillo*, 140 Vt. 206, 208, 436 A.2d 757, 759 (1981), the record reveals the following relevant facts. At two o'clock in the morning of July 2, 1985, a Burlington police officer responded to a sexual assault complaint. The complainant gave a statement naming defendant as her assailant and describing how the alleged assault had occurred. The officer took complainant to a hospital where a physician treated her and collected physical evidence to send to the state police laboratory. The complainant later showed the police officer the site of the alleged assault. An examination of the site produced a leather belt, which was draped over a tree; nearby on the ground lay complainant's undergarments. Police also found a brown leather wallet containing five pieces of identification belonging to defendant. The officer then brought complainant to the police department where he tape-recorded complainant's version of the events leading up to and during the alleged assault.

Defendant was subsequently arrested, taken to the police department, and given *Miranda* warnings. Defendant initialed and signed waivers to his rights, indicating that he understood them. He nevertheless wanted to talk to the investigators. Defendant

then made several inculpatory statements. When defendant was asked to explain the presence of his wallet and belt at the site of the alleged assault, he asked to speak with his mother. After speaking with his mother privately, defendant decided to end the interrogation.

Defendant appeals his conviction and presents three issues for our review: (1) that the trial court committed reversible error by admitting prior consistent statements of the complainant before there had been any attempt to impeach her testimony; (2) that the failure to tape-record defendant's custodial interrogation violated his due process rights under the Vermont Constitution; and (3) that the trial court committed reversible error when it refused to instruct the jury that it could draw an inference that evidence not presented by a party would be detrimental to that party.

I.

Defendant alleges that the trial court erred in allowing testimony that the statements complainant made to the police officer one hour after the alleged assault were consistent with statements complainant tape-recorded six hours later. As the State's first witness, the officer who investigated the alleged sexual assault testified, over defendant's objection, that the recorded and unrecorded versions of complainant's statement were virtually identical. Defendant argues that the bolstering of a witness' credibility before it is attacked is prohibited by *Woodmansee* v. *Stoneman*, 133 Vt. 449, 344 A.2d 26 (1975).

In *Woodmansee*, this Court held that statements made prior to trial and offered in corroboration as prior consistent statements were inadmissible hearsay in the absence of an attempt to impeach the witness' testimony. *Id.* at 457, 344 A.2d at 30-31. In that case, the State's principal witness made several statements which in some respects contradicted her previous testimony and in other respects corroborated it. These prior statements were outlined by the State in its opening remarks to the jury and were introduced into evidence during the State's case-in-chief as prior consistent statements. Defendant objected on the basis of the hearsay character of the testimony, and on appeal, this Court held the admission of the statements constituted reversible error. *Id.*

The instant case does not fall within the confines of *Woodmansee,* however. Here, the State presented no hearsay testimony. The police officer did not testify as to the substance of complainant's statements. He merely testified that complainant's recorded statement was the same as her original statement to the police earlier that same morning. Nor did the State comment in any way about the prior statements in its opening remarks. Thus, the instant case is factually dissimilar to *Woodmansee.*

More significantly, we find the prior-consistent-statement rationale of *Woodmansee* to be inapplicable to the instant appeal. As previously stated, the officer's statements were not hearsay, since he did not comment on the substance of the statements themselves, but, rather, testified that the statements were identical. See V.R.E. 801 (definition of hearsay); see also *People* v. *Sanford,* 402 Mich. 460, 485, 265 N.W.2d 1, 13 (1978) (officer's testimony as to identification of defendants by victim not hearsay, because officer was not testifying as to the truth of the identification, but to fact that it was made and the circumstances surrounding it; the admissibility of such evidence lay within the sound discretion of the trial court). Further, we find no abuse of discretion by the trial court in allowing the State to have the police officer testify as to the consistency of complainant's two statements prior to complainant's testimony at the trial and prior to defendant's attempted impeachment of her testimony.[1] See *State* v. *Richards,* 144 Vt. 16, 19, 470 A.2d 1187, 1189 (1983) (control over trial conduct and evidentiary rulings lies within wide discretion of the trial court). See also V.R.E. 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses . . . .").[2]

## II.

Defendant also argues that this Court should interpret Chapter 1, Article 10 of the Vermont Constitution to require police officers to tape-record inculpatory statements that a criminal suspect makes while in custody. Defendant urges this Court to

---

[1] Other jurisdictions allow prior consistent statements as corroborative evidence even though the complainant in a rape case has not yet been impeached. See, e.g., *State* v. *Martin,* 309 N.C. 465, 475-76, 308 S.E.2d 277, 284 (1983).

[2] We also do not find that the actions complained of in the instant case rose to the level of prosecutorial "overkill," which we have previously held could lead to reversible error. See *State* v. *Zeisner,* 133 Vt. 375, 377, 340 A.2d 69, 71 (1975).

adopt the ruling in a recent Alaska Supreme Court decision requiring, as a component of due process, that police officers must tape-record a criminal suspect's statement if circumstances permit. See *Stephan* v. *State*, 711 P.2d 1156, 1162 (Alaska 1985). Absent a recording of defendant's statements and absent a finding that a tape recording was not feasible, defendant would have this Court declare the admission of defendant's statements to be reversible error. This we decline to do. We note initially that the Alaska Supreme Court based its ruling solely upon its interpretation of the Alaska Constitution. *Id.* at 1160. This Court has never previously held that the Vermont Constitution mandates tape-recording of a suspect's voluntary statements as a requirement of due process, nor does our reading of the Vermont Constitution find any support for defendant's position. The most appropriate means of prescribing rules to augment citizens' due process rights is through legislation. See *State* v. *Felch*, 92 Vt. 477, 485, 105 A. 23, 25 (1918). In the absence of legislation, we do not believe it appropriate to require, by judicial fiat, that all statements taken of a person in custody be tape-recorded. It was therefore not erroneous to admit statements defendant made while in custody. See *State* v. *Billado*, 141 Vt. 175, 181, 446 A.2d 778, 782 (1982).

### III.

■ Finally, defendant argues that it was reversible error for the trial court to refuse to instruct the jury that an inference could be drawn that evidence not presented by a party would be detrimental to that party. The State produced testimony of the physician who treated complainant that he had forwarded physical evidence to the state police laboratory. The State did not, however, produce the chemist who examined the evidence to testify as to what the examination of the physical evidence revealed. We have previously found that failure to give an instruction similar to that requested by defendant herein did not rise to the level of reversible error. *State* v. *Smith*, 145 Vt. 121, 128-29, 485 A.2d 124, 129 (1984). Furthermore, the court did instruct the jury that defendant was entitled to every inference in his favor which reasonably could be drawn from the evidence presented at the trial. We find no abuse of discretion nor any reversible error by the trial court in failing to give defendant's requested instruction. See *id.* at 129, 485 A.2d at 129.

*Affirmed.*