### STATE of Maine

v.

### Michael BUZZELL.

Supreme Judicial Court of Maine.

Argued Nov. 18, 1992.

Decided Dec. 14, 1992.

Michael E. Carpenter, Atty. Gen., Donald W. Macomber (orally), Eric Wright, Asst. Attys. Gen., Augusta, for the State.

Matthew B. Nichols (orally), Boulos & Gardner, Biddeford, for defendant.

Craig T. Smith, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, amicus curiae.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

CLIFFORD, Justice.

Defendant Michael Buzzell appeals his convictions of manslaughter, 17–A M.R.S.A. § 203(1)(A) (Supp.1991), and robbery, 17–A M.R.S.A. § 651(1)(C) (1983), following a jury trial in the Superior Court (Cumberland County, *Cole, J.*). He contends that admissions he made to the police should have been suppressed because the due process clause of the Maine Constitution requires electronic recording of custodial interrogation. He further asserts that the admission of certain evidence violated his constitutional rights. Finally, he contends that the State failed to establish the *corpus delicti* and that there was insufficient evidence to convict him. Finding no merit in any of Buzzell's contentions, we affirm the convictions.

This case arises out of the following facts. Thomas Ferenc died on a stairwell landing in a Portland apartment building following an evening of drinking and card playing with Buzzell and another individual, Wendell Price. Based on what Buzzell and Price told them at the scene, police initially believed that Ferenc, whose blood-alcohol level was 0.34, had accidentally fallen down the stairs after leaving Price's apartment. At a later date Price contacted the Portland police and told Detective Daniel Young that he and Buzzell had robbed Ferenc and that Buzzell had thrown Ferenc down the stairs. Young then asked Buzzell to come to the police station for questioning.

On his arrival, Young informed Buzzell that Ferenc's death was under investigation as a criminal matter and gave him the warnings required by *Miranda v. Arizona*,

384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Buzzell agreed to answer questions and subsequently made a number of inculpatory admissions. After obtaining the admissions, Detective Young asked Buzzell if he would make a videotaped statement. Buzzell replied that he was not refusing the request but he wished to speak with an attorney first. Young then ended the interview.

Buzzell was indicted for manslaughter and robbery. Prior to trial, defense counsel moved *in limine* to exclude any evidence relating to the invocation of Buzzell's right to counsel during the interview with Detective Young. The State informed the trial court that it would make no mention of this and indicated that Detective Young understood he was to say nothing on the subject.

During its examination of Detective Young, the State asked whether a tape had been made of his interview with Buzzell. Young said no and stated that Buzzell had not wanted to do a taped interview. The defense then objected on the basis that this line of questioning was exactly what the motion *in limine* sought to avoid. The objection was overruled. Later, on redirect, the subject came up again. Detective Young never stated that Buzzell had asked to speak with an attorney, but he did say that Buzzell had asked for the interview to stop and that he had expected to have either a written or electronic statement before Buzzell left.

## I.

Buzzell first contends that the due process clause of the Maine Constitution requires the electronic recording of custodial interrogation when feasible.[1] He argues that the remedy for any unexcused failure to record should be suppression of the statements and asks us to suppress his statements to Detective Young. We are unpersuaded by the contention.

■ Buzzell relies in large part on *Stephan v. State*, 711 P.2d 1156, 1159 (Alaska 1985), in which the Alaska Supreme Court ruled that the due process clause of its state constitution required the recording of custodial interrogation when feasible.[2] He offers a number of reasons in support of a similar interpretation of the Maine Constitution. For example, he maintains that a recording (1) provides an objective record and avoids the situation in which a police officer rehearses a statement with a suspect before recording it,[3] (2) aids police by demonstrating they have not used improper tactics during questioning, and (3) conserves judicial resources by reducing the need for the "swearing contests" that often occur at suppression hearings.

■ While there are obvious benefits to be realized when statements are recorded, Buzzell has not persuaded us that recording is essential to ensure a fair trial, or that the due process clause of our state constitution requires electronic recording of custodial interrogation.[4] Therefore,

1. The Maine Civil Liberties Union, which filed an amicus brief in this case, joins Buzzell in this argument.

2. We note that the Alaska Supreme Court is the only court to so interpret its state constitution. All other courts considering the issue have said that due process does *not* require the recording of custodial interrogation. *See, e.g., Coleman v. State*, 189 Ga.App. 366, 375 S.E.2d 663, 664 (1988); *State v. Rhoades*, 121 Idaho 63, 822 P.2d 960, 970 (1991); *People v. Everette*, 187 Ill. App.3d 1063, 135 Ill.Dec. 472, 543 N.E.2d 1040, 1047 (1989); *Williams v. State*, 522 So.2d 201, 208 (Miss.1988); *Jimenez v. State*, 105 Nev. 337, 775 P.2d 694, 696–97 (1989); *State v. Gorton*, 149 Vt. 602, 548 A.2d 419, 422 (1988); *State v. Spurgeon*, 63 Wash.App. 503, 820 P.2d 960, 963 (1991).

Texas requires that custodial statements used against a defendant in a criminal proceeding be recorded, but this requirement is statutory. *See Ragan v. State*, 642 S.W.2d 489, 490 n. 1 (Tex. Crim.App.1982).

3. This is what Buzzell contends happened in his case. He argues that electronic recording should routinely occur from the very beginning of the interrogation.

4. We find no authority, and none is cited by Buzzell, which suggests that the due process clause of the United States Constitution requires the electronic recording of custodial interrogation. We have traditionally exercised great restraint when asked to interpret our state constitution to afford greater protections than those recognized under the federal constitution. *See State v. Tarantino*, 587 A.2d 1095, 1098 (Me. 1991); *Blount v. Department of Educ. & Cultural Servs.*, 551 A.2d 1377, 1385 (Me.1988); *City of Portland v. Jacobsky*, 496 A.2d 646, 648–49 (Me.

Buzzell's statements to Detective Young, voluntarily made after *Miranda* warnings were given, were properly admitted into evidence.

## II.

Buzzell next asserts that some of Detective Young's testimony during the trial violated the rule of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), because it related to Buzzell's invocation of his right to counsel. In *Doyle,* the United States Supreme Court held that a defendant's silence following the giving of *Miranda* warnings (which include advising a suspect of his right to counsel) may not be used against him at trial. 426 U.S. at 619, 96 S.Ct. at 2245.

█ In response to Buzzell's motion *in limine,* the State agreed prior to trial that there would be no mention of Buzzell's request to first speak with an attorney when asked by Detective Young if he was willing to make a videotaped statement. Despite this agreement, the State elicited some information from Detective Young on direct and redirect examination concerning the request to videotape the interview.[5] Buzzell argues that this testimony prejudiced him [6] and requires vacating his conviction. We disagree.

The jury learned from Detective Young that at the *end* of the interview he had asked Buzzell to make a videotaped statement and that Buzzell had declined the invitation and stopped the interview. It was clear the request came at the end of the interview, after Buzzell had made incriminating statements. Although the jury was not given an explanation of why no videotape was made, they did learn that Buzzell had not actually refused the request.[7] Moreover, they were never told that Buzzell had asked to speak with an attorney. Under these circumstances, we find no *Doyle* violation.[8]

## III.

Buzzell further argues that the State failed to establish the *corpus delicti* and that there was insufficient evidence to convict him on the manslaughter charge.

█ The *corpus delicti* rule requires the State to establish to a probable cause standard that the victim died and that a criminal agency was responsible for the death.[9] *State v. Discher,* 597 A.2d 1336, 1339 (Me.1991). In order to withstand a motion for judgment of acquittal, the State must meet this burden without relying on any post-crime admissions of a defendant. *Id.* In this case the testimony of the medical examiner and the eyewitness testimony

1985). We decline to adopt a more expansive interpretation of the Maine Constitution in this case as well.

5. On direct examination the State asked:
   Q. Did you make any audio or video tape recording of the conversation you then had with [Buzzell]?
   A. No, sir, I did not.
   Q. Did that come up as a subject?
   A. Yes, at the end of the interview.
   Q. And tell—did Mr. *Buzzell* express a desire to do that or not do that?
   A. He—he did not want to do an audio or video interview.
   On redirect, the following exchange took place:
   Q. [D]o your notes fully reflect the conversations that you had with Mr. Buzzell?
   A. No, I—what I did at first is took basic notes of the interview. I expected to have some kind of a video/audio/written statement before he left, and I did not expect the interview to stop as quickly as it did. What I did is, as soon as Mr. Buzzell asked for it to be stopped, he left. . . .

6. Buzzell also contends that certain remarks made by the State during closing argument violated *Doyle.* After carefully reviewing the transcript, we find no merit in this contention.

7. On cross-examination, the defense inquired into the subject and elicited from Detective Young the fact that his notes of the interview included the words "didn't refuse" as Buzzell's response to the request to videotape.

8. Although no *Doyle* violation occurred in this case, we question the State's need to inquire into the videotape issue, and we caution the State to more carefully phrase its questions when inquiring about a subject that has the potential to seriously prejudice a defendant.

9. The State must prove the *corpus delicti* to two separate standards, only the first of which is at issue in this case. *See State v. Discher,* 597 A.2d 1336, 1339 n. 1 (Me.1991).

of Wendell Price that he saw Buzzell throw the victim down the stairs were enough to establish the *corpus delicti.*

Finally, the record discloses that there was sufficient evidence for the jury rationally to find beyond a reasonable doubt every element of the offense charged. *State v. Barry,* 495 A.2d 825, 826 (Me.1985).

The entry is:

Judgments affirmed.

All concurring.