James P. BRASHARS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Gary Lynn Johnston, Appellant,

v.

Commonwealth of Kentucky, Appellee.

Nos. 1999–SC–0852–MR,
1999–SC–0853–MR.

Supreme Court of Kentucky.

Aug. 24, 2000.

Frank W. Heft, Jr., Office of the Jefferson District Public Defender, Daniel T. Goyette, Jefferson District Public Defender, of Counsel, Louisville, for Appellant, James P. Brashars.

J. David Niehaus, Deputy Appellate Defender, Office of the Jefferson District Public Defender, Daniel T. Goyette, Jefferson District Public Defender, of Counsel, Louisville, for Appellant, Gary L. Johnston.

A.B. Chandler, III, Attorney General, Brian T. Judy, Assistant Attorney General, Criminal Appellate Division, Frankfort, for Appellee.

## MEMORANDUM OPINION
## OF THE COURT

The trial court entered judgment upon appellants' conditional guilty pleas to the felony offenses of First Degree Sodomy of a child under twelve (12) years of age and First Degree Sexual Abuse and to the misdemeanor offense of Distribution of Obscene Matter to a Minor. The trial court sentenced each defendant to the minimum sentence of twenty (20) years for First Degree Sodomy, the maximum sentence of five (5) years for First Degree Sexual Abuse, and twelve (12) months for Distribution of Obscene Matter to a Minor and ordered that the sentences on the three convictions run concurrently for a total sentence of twenty (20) years. Brashars and Johnston appeal to this Court as a matter of right. After a review of the record, we affirm the trial court's judgment with respect to both appellants.

## BACKGROUND

The Jefferson County Grand Jury returned indictments for the three crimes with which the appellants stand convicted against Brashars, Johnston, and a third man, David J. Southard,[1] The Commonwealth alleged that the men had subjected an eight (8) year old child, J.J., to sexual contact, including deviate sexual conduct, and had shown the child homosexual pornographic movies.

Pursuant to RCr 7.24(1), the Commonwealth disclosed to the appellants during pre-trial discovery that it intended to introduce at trial incriminating statements made by the appellants to Detective William Stanley during Detective Stanley's investigation. Brashars and Johnston filed motions to suppress these statements on the grounds that they had not given the statements voluntarily.

The trial court conducted an evidentiary hearing at which Detective Stanley testified that he had worked as a police officer for nineteen (19) years and spent the last ten (10) years assigned to the Crimes Against Children Unit (CACU). Detective Stanley explained that he investigated allegations that the three men had sexual contact with a male child, and testified that he interviewed the men both at the trailer park where they resided and at the CACU office downtown. Detective Stanley testified that he had given the appropriate *Miranda* warnings to the men prior to his questioning and that each of the men had signed a form stating that he understood his rights and did not wish to have an attorney present during questioning. Detective Stanley questioned each of the men individually at the CACU office and each of the men admitted to the accusations.

Detective Stanley admitted that he did not record any of the interviews on video or audio tape and indicated he had not done so because the men exhibited reluctance to speak with him initially and he was concerned that the men would not have allowed him to continue questioning them if he tried to record their statements. Although the CACU does not have a policy regarding the electronic recording of interrogations, Detective Stanley explained that he had used tape recorders in the past and knew that the Captain's office contained a video camera and that audio equipment was available to him.

Brashars and Johnston then abandoned the original grounds for their suppression motions and argued that the trial court should suppress the confessions because

---

1. Southard entered a guilty plea pursuant to *North Carolina v. Alford* to the amended charge of complicity to Class B felony First Degree Sodomy and First Degree Sexual Abuse by complicity. The trial court sentenced Southard to the minimum penalty of ten (10) years on the sodomy conviction and the maximum penalty of five (5) years for the sexual abuse conviction, but ordered that the two sentences run concurrently for a total of ten (10) years. Southard did not seek appellate review of his convictions.

Detective Stanley elected not to record the confessions on video or audiotape and that due process requires law enforcement officers, where feasible, to tape interrogations. After asking the parties to brief the issue, the trial court overruled the appellants' motions to suppress their incriminating statements and set the matter for trial.

Subsequently, the appellants reached a plea agreement with the Commonwealth and petitioned the court, pursuant to RCr 8.09, to allow them to enter a conditional guilty plea and preserve for appellate review the trial court's ruling with respect to their motions to suppress their confessions. The trial court accepted the conditional guilty pleas and sentenced Brashars and Johnston in accordance with the Commonwealth's recommendations.

## ELECTRONIC RECORDING OF QUESTIONING

■ Brashars and Johnston acknowledge that the issue of whether due process and the Commonwealth's responsibility to preserve evidence require law enforcement officials to electronically record custodial interrogations is an issue of first impression in the Commonwealth. The appellants argue that this Court should hold that trial courts should suppress alleged confessions in cases where the Commonwealth seeks to admit incriminating statements stemming from unrecorded custodial interrogations[2] because defendants otherwise must engage in a "swearing contest" with law enforcement officers in order to litigate issues relating to the voluntariness or substance of confessions. According to Brashars and Johnston, trial courts invariably resolve these "swearing contests" in favor of the law enforcement officers, and a recording requirement is necessary to adequately protect defendants and to ensure fair process. Brashars and Johnston cite to case law from a minority of jurisdictions which have either interpreted their state constitutional due process guarantees to require law enforcement officers to electronically record oral statements of the accused during custodial interrogations[3] or which have adopted such a requirement pursuant to their supervisory powers.[4] They ask this Court to adopt a similar rule for prosecutions in the Commonwealth of Kentucky.

Brashars and Johnston concede that the due process protections of the Fifth and Fourteenth Amendments to the United States Constitution do not mandate a recording requirement, and, although the United States Supreme Court has not yet directly addressed this issue, we agree with other jurisdictions[5] which have addressed this question that it is unlikely such claims could satisfy the standard of constitutional materiality adopted by the Court in *California v. Trombetta*.[6]

Consequently, the appellants seek a basis for a recording requirement in the

---

**2.** We address the appellants' "moderate" position despite the fact that it is unclear whether a holding limited to custodial interrogations would result in the reversal of the appellants' convictions. Although the trial court did not enter written findings of fact with respect to the appellants' original suppression grounds, he expressed his doubts at the end of the suppression hearing whether Detective Stanley was even required to give the appellants *Miranda* warnings because he believed the questioning was not a custodial interrogation.

**3.** *Stephan v. State*, 711 P.2d 1156 (Alaska 1985) ("[A]n unexcused failure to electronically record a custodial interrogation conducted in a place of detention violates a suspects right to due process under the Alaska Constitution and ... any statement thus obtained is generally inadmissible." *Id.*).

**4.** *State v. Scales*, 518 N.W.2d 587, 592 (Minn. 1994).

**5.** *See, e.g., Stephan v. State, supra* note 3 at 1160; *Commonwealth v. Craft*, 447 Pa.Super. 371, 669 A.2d 394, 396–397 (1995); *State v. Kilmer*, 190 W.Va. 617, 439 S.E.2d 881, 892 n. 15 (1993); *Williams v. State*, 522 So.2d 201, 208 (Miss.1988).

**6.** 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

Kentucky Constitution, and ask this Court to interpret the due process protections of our state constitution as exceeding those in the United States Constitution. In *Commonwealth v. Cooper*,[7] this Court found the right against self-incrimination guaranteed by the Kentucky Constitution did not exceed the protections of the United States Constitution and cautioned that only in a handful of instances did Kentucky Constitutional protections exceed those in the United States Constitution:

> From time to time in recent years this Court has interpreted the Constitution of Kentucky in a manner which differs from the interpretation of parallel constitutional rights by the Supreme Court of the United States. However, when we have differed from the Supreme Court, it has been because of Kentucky constitutional text, the Debates of the Constitutional Convention, history, tradition, and relevant precedent. We have admonished against "novel theories to revise well-established legal practice and principle" and stated the prevailing rule as follows:
>
> > While we have decided several recent cases protecting individual rights on state constitutional law grounds, our stated purpose is to do so only where the dictates of our Kentucky Constitution, tradition, and other relevant precedents call for such action.[8]

While we may use, in our analysis, the jurisprudence from our sister states which have addressed this issue in the context of their own constitutional provisions,[9] our decision eventually must turn on an interpretation of the due·process protections afforded criminal defendants in Kentucky Constitution Section Eleven:

> In all criminal prosecutions the accused has the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor. He cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land; and in prosecutions by indictment or information, he shall have a speedy public trial by an impartial jury of the vicinage; but the General Assembly may provide by a general law for a change of venue in such prosecutions for both the defendant and the Commonwealth; the change to be made to the most convenient county in which a fair trial can be obtained.[10]

After reviewing the text, history, and previous precedent interpreting Section Eleven's due process protections, we hold that the Constitution of Kentucky does not mandate the electronic recording requirement advocated by the appellants.

This Court has never held that the procedural due process protections of Section Eleven extend beyond the protections of the Fifth and Fourteenth Amendments to the United States Constitution, and the appellate courts of this state have interpreted other clauses of Section Eleven as co-extensive with federal protections.[11]

---

7. Ky., 899 S.W.2d 75 (1995).

8. *Id.* at 77–78.

9. *See, e.g., Stephan v. State, supra* note 3; *Commonwealth v.. Craft, supra* note 5; *State v. Kilmer, supra* note 5; *Williams v. State, supra* note 5; *State v. Gorton,* 149 Vt. 602, 548 A.2d 419 (1988); *Baynor v. State,* 355 Md. 726, 736 A.2d 325 (1999); *State v. Buzzell,* 617 A.2d 1016 (Me.1992); *Commonwealth v. Diaz,* 422 Mass. 269, 661 N.E.2d 1326 (1996); *State v. Kekona,* 77 Hawai'i 403, 886 P.2d 740 (1994);

*State v. James,* 237 Conn. 390, 678 A.2d 1338 (1996).

10. Constitution of Kentucky § 11.

11. *See, e.g., Newman v. Stinson,* Ky., 489 S.W.2d 826, 829 (1972) and *Commonwealth v. Cooper,* Ky., 899 S.W.2d 75 (1995) (right against self-incrimination); *Ross v. Commonwealth,* Ky.App., 577 S.W.2d 6, 9 (1978) (right to compulsory process); *Cane v. Commonwealth,* Ky.App., 556 S.W.2d 902 (1977) (right to counsel); *Commonwealth v. Willis,* Ky.,

Additionally, in *Commonwealth v. Raines*,[12] we implicitly found Section Eleven's protections co-extensive with federal protections when we jointly addressed, under standards adopted from federal case law, federal and state due process challenges to a statute authorizing pretrial suspension of operator's license privileges.[13] Although we could end our inquiry here, we believe that the appellants' argument fails on a more fundamental level.

From the perspective of this Court, the issue before us is not exclusively a question of cost benefit analysis, or, as phrased by the appellants, whether an electronic recording requirement would enable courts to easily resolve disputes regarding what transpired during a custodial interrogation without unduly burdening law enforcement. We agree with the view that widespread electronic recording has its benefits,[14] although we stop short of finding electronic recording a panacea which could end disputes over confessions to law enforcement officers.[15] As we are asked to determine whether due process requires such a requirement, our inquiry, therefore, must focus on whether determinations of reliability traditionally made by trial courts on the basis of opposing testimony deprive defendants of fundamental fairness. Due process inquiries require us to assess "[t]he risk of an erroneous deprivation of [liberty] as a consequence of the ... procedures used."[16] Accordingly, we disagree with the appellants' contention that fundamental fairness cannot be ensured by a trial court's resolution of factual disputes regarding custodial interrogations on the basis of testimony from the persons involved. As was the case with the Supreme Court of Connecticut in *State v. James*:[17]

> We are not persuaded that determinations of admissibility traditionally made by trial courts are inherently untrustworthy or that independent corroboration of otherwise competent testimonial or documentary evidence regarding the existence and voluntariness of a confession is necessary to comport with constitutional due process requirements.[18]

We depend on trial courts to resolve factual disputes, and trial judges commonly decide, without independent corroboration, disputed issues regarding whether a defendant gave consent to a search of his home or vehicle or whether a defendant's conduct gave rise to reasonable suspicion for a detention or probable cause for a search. We need not concern ourselves with the appellants' claims regarding the ability of an electronic recording requirement to

716 S.W.2d 224 (1986) (right to confront accusers).

12. Ky., 847 S.W.2d 724 (1993).

13. *Id.* at 728.

14. *See, e.g., State v. Kekona, supra* note 9 at 746:

> Undeniably, recording a custodial interrogation is important in many contexts. A recording would be helpful to both the suspect and the police by obviating the "swearing contest" which too often arises when an accused maintains that she asserted her constitutional right to remain silent or requested an attorney and the police testify to the contrary. A recording would also "help to demonstrate the voluntariness of the confession, the context in which a particular statement was made and of course, the actual content of the statement." *Id.*

15. *See, e.g., State v. James, supra* note 9 at 1360:

> [R]ecording would not in all circumstances be a foolproof mechanism for accurately resolving disputes between an accused and the police as to the circumstances surrounding a confession. For example, there might, despite a recording, be disputes concerning what transpired before the recording began or during breaks in the interview when the suspect is not being recorded, such as when the suspect uses the bathroom ... or on occasions when the tape recording may be inaudible or partially so. *Id.*

16. *Commonwealth v. Raines, supra* note 12 at 727.

17. *Supra* note 9.

18. *Id.* at 1360.

solve all of the problems relating to custodial interrogations unless Brashars and Johnston first make a threshold showing that such problems exist because of inadequacies with the current procedures. The inability of the appellants to make such a showing merely reaffirms our faith in the ability of trial judges to fairly evaluate factual disputes, and, for that reason, we conclude that the due process protections in Section Eleven of the Constitution of Kentucky do not mandate the recording requirement advocated by the appellants.[19]

 Although we find that the Kentucky Constitution does not require electronic recording of custodial interrogations, we believe the circumstances surrounding such questioning remain appropriate grounds for defendants to explore at trial as the "defendant [still] retains the right to put before the jury, as the trier of fact, all evidence, including the facts and circumstances surrounding the making of his confession, 'relevant to weight or credibility.' "[20] In other words, although we disagree with the appellants' contention in as much as it relates to the admissibility of statements admitted without corroboration by means of electronic recording, we believe defendants may ask the "trier of fact to consider the circumstances of the confession, including any lack of corroboration, in determining the weight, if any, to be afforded that particular piece of evidence."[21] Indeed, in *Crane v. Kentucky*,[22] the United States Supreme Court held that the United States Constitution protects a defendant's right to introduce at trial evidence relating to the reliability of a confession:

Whether rooted directly in the Due Process Clause of the Fourteenth Amendment ... or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." We break no new ground in observing that an essential component of procedural fairness is an opportunity to be heard. That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence. In the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and "survive the crucible of meaningful adversarial testing."[23]

## "STATEMENTS" IN THE CONTEXT OF KRE ARTICLE EIGHT

 Brashars and Johnston argue that Detective Stanley's investigative report containing a synopsis of the appellants' incriminating statements did not contain "statements" within the contemplation of Article Eight of the Kentucky Rules of Evidence because Detective Stanley's summary of the interview is not an "oral or written assertion" by a declarant as defined in KRE 801(a). The appellants argue, therefore, that the trial court should

---

19. We likewise decline the appellants' request to adopt such a requirement independent of constitutional requirement in our supervisory capacity. We agree with the Supreme Court of Vermont that "[i]n the absence of legislation, we do not believe it appropriate to require, by judicial fiat, that all statements taken of a person in custody be tape recorded," *State v. Gorton, supra* note 9.

20. *State v. Kekona, supra* note 9 at 746 (quoting *State v. Kelekolio*, 74 Haw. 479, 849 P.2d 58, 75 (1993)).

21. *State v. James, supra* note 9 at 1360.

22. 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). *See also Crane v. Commonwealth*, Ky., 726 S.W.2d 302 (1987) (affirming conviction on harmless error analysis upon remand).

23. *Crane v. Kentucky, supra* note 22 at 476 U.S. 683, 690–91, 106 S.Ct. 2142, 2146–47, 90 L.Ed.2d 636, 645.

have suppressed their confessions because the Commonwealth could not have introduced Detective Stanley's summary under KRE 801A(b)(1)'s exception to the hearsay rule for statements of a party.

■ Brashars and Johnston allege that they presented this argument to the trial court and preserved it for appellate review within the text of a memorandum in support of their motions to suppress. Under a heading titled "Argument: Due process requires the statements made by the defendants to be suppressed since the custodial interrogations were not electronically recorded, or, in the alternative, the Court should exercise its supervisory power and exclude the statements based on the same grounds," counsel for Brashars wrote:

> This Court has the responsibility to ensure that evidence admitted at trial is sufficiently reliable so that it may be of use to the finder of fact who will draw the ultimate conclusions of guilty or innocence. "[R]eliability is the linchpin in determining admissibility" of evidence under a standard of fairness that is required by the Due Process Clause of the Fourteenth Amendment. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977) (analyzing admissibility of identification testimony). *The Kentucky Rules of Evidence specifically grant this Court the power and duty to exclude relevant evidence if necessary to facilitate the ascertainment of truth. See KRE 403, KRE 611(a).*

Brashars and Johnston argue before this Court that the last sentence in the paragraph quoted above presented to the trial court an issue of whether the Commonwealth could introduce the incriminating "statements" through an exception to the hearsay rule, and contend that both the trial court below and the Commonwealth overlooked the argument. We are not surprised that others have overlooked this argument, and believe the rash of myopia may stem from the fact that nothing resembling the argument the appellants make on appeal was even whispered in the trial court.

Before the trial court, the appellants argued that, if the trial court concluded that due process did not require electronic recording of confessions made during custodial interrogations, the trial court "should exercise its supervisory power and exclude the statements" because of the failure of Detective Stanley to electronically record them. The memorandum filed in support of the motion to suppress the statements contains zero references to KRE 801(a)'s definition of "statement," and, in fact, zero references to Article Eight of the Kentucky Rules of Evidence. Appellate courts review only claims of error which the parties presented before the trial court.[24] We find the argument raised by Brashars and Johnston before this Court wholly unpreserved for our review.

We would note, however, that the appellants' argument would fail on its merits, as well, because the Kentucky Rules of Evidence contain no requirement that, in order to be admissible, testimony relating to a declarant's oral statement must be a verbatim recitation of that statement. Seldom will a witness be able to recall each and every word spoken by a declarant, but, by paraphrasing, witnesses may communicate relevant evidence regarding the substance of a declarant's statement. Any dispute as to what a declarant actually said goes to the weight of such testimony and not its admissibility.

## CONSTITUTIONALITY OF KENTUCKY'S MEGAN'S LAW

■ At final sentencing, the appellants' counsel made oral motions requesting that the trial court declare Kentucky's Sex Of-

---

24. *See Humphrey v. Commonwealth*, Ky., 962 S.W.2d 870, 872 (1998); *Caslin v. Commonwealth*, Ky., 491 S.W.2d 832 (1973).

fender Registration Act, more commonly referred to as Megan's Law,[25] unconstitutional. The appellants alleged in the trial court that the statutory notification scheme violated the separation of powers doctrine, constitutional protections against double jeopardy, arbitrariness, bills of attainder and involuntary servitude, the right to privacy under the Kentucky Constitution, and substantive due process rights under the United States Constitution. The appellants filed no written motion with the trial court, and neither appellant gave notice of the constitutional challenge to the Office of the Attorney General as required by CR 24.03:

> [W]hen the constitutionality of an act of the General Assembly affecting the public interest is drawn into question in any action, the movant shall serve a copy of the pleading, motion or other paper first raising the challenge upon the Attorney–General.[26]

Brashars and Johnston urge this Court to overlook their failure to notify the Attorney General by arguing that this notification requirement is found only within a civil rule relating to intervention and emphasizing that the Commonwealth was a party to this action and could easily itself have notified the Attorney General.

In *Maney v. Mary Chiles Hospital*,[27] this Court stated that a sound basis exists for the notification rule notwithstanding the fact that the rule appears in an awkward place in the civil rules and in a statute concerning declaratory judgments:

> During oral argument and in colloquy between the Court and counsel, an issue emerged as to whether a valid judgment determining constitutionality could be entered by a trial court in the absence of prior notification to the Attorney General. From our examination of KRS 418.075 and CR 24.03, we are convinced that there is a compelling public purpose

to be served by the notification rule. The language of the statute and rule evinces a strong public policy in favor of notification to the Attorney General whenever the constitutionality of a statute is placed in issue despite the location of KRS 418.075 in the Kentucky Declaratory Judgments Act and the appearance of CR 24.03 in our rule relating to intervention.

. . .

> Among the purposes underlying [KRS 418.075] is the right of the people, by the chief law officer, to be heard on matters affecting the validity of duly enacted statutes. KRS 15.020 . . . . It is in the interest of the people to afford the Attorney General an opportunity to participate on their behalf, whether it is to argue for or against the validity of a statute.[28]

In this case, however, the appellants cannot claim ignorance of CR 24.03 because the trial court advised counsel they must notify the Attorney General of such a challenge and indicated his intention to summarily overrule any constitutional objection to the statutory sexual offender notification scheme if counsel had not notified the Attorney General. Counsel did not request a continuance to file a written motion and serve the Attorney General, but rather assented to the trial court's intention to summarily overrule the motions.

Although the appellants suggest that CR 24.03 is unclear regarding the actor responsible for notifying the Attorney General and attempt to slough the burden off upon the Commonwealth, this Court changed the language of CR 24.03 to require a party seeking to have a statute declared unconstitutional to notify the Attorney General even when the Common-

---

25. KRS 17.570 *et seq.*

26. CR 24.03.

27. Ky., 785 S.W.2d 480 (1990).

28. *Id.* at 481.

wealth is a party to the action.[29] As a result of the manner in which Brashars and Johnston chose to present their constitutional objections, the "record" as to these motions before this Court consists of a number of claims of constitutional violations without any warrants, and we, as well as the trial court, have been deprived of an adversarial hearing regarding the constitutionality of sexual offender notification. Accordingly, we hold that the appellants' failure to notify the Attorney General of their constitutional challenges alone provided the trial court with a sufficient basis to overrule the motions and affirm the trial court's ruling.

For the reasons discussed above, we affirm the appellants' convictions.

All concur.

---

**29.** Prior to January 1, 1999, the effective date of the amended CR 24.03 quoted in the text above, the relevant portion of CR 24.03 read: When the constitutionality of an act of the General Assembly affecting the public interest is drawn in question *in any action to which the State or an officer, agency, or employe[e] thereof is not a party,* the movant shall serve notice of the motion upon the Attorney General.
Former CR 24.03 (emphasis added).