**STATE of Minnesota, Respondent,**

v.

**Douglas Arthur CONGER,
petitioner, Appellant.**

**No. C3–01–699.**

Supreme Court of Minnesota.

Nov. 7, 2002.

John M. Stuart, State Public Defender, Susan J. Andrews, Theodora Gaitas, Asst. State Public Defenders, Minneapolis, MN, for Appellants.

Mike Hatch, Attorney General, John B. Galus, Asst. Attorney General, St. Paul, MN, David Hauser, Otter Tail County Attorney, Fergus Falls, MN, for Respondents.

HEARD, considered, and decided by the court en banc.

## OPINION

MEYER, Justice.

Douglas A. Conger was convicted of two counts of criminal sexual conduct in the second degree stemming from allegations that he inappropriately touched his daughter, A.C. At Conger's trial, Detective Brian Fox testified that Conger answered Fox's inquiry into the allegations by saying "[i]f my daughter said it happened, it must have happened."

Conger appealed his conviction, claiming that his statement to Detective Fox should have been excluded because police failed to record it, and asking that we extend the exclusionary rule of *State v. Scales* to noncustodial interrogations occurring at police stations. Conger asserts that a record of the interview would have made clear to the jury that he was not admitting guilt but answering a series of speculative questions. The court of appeals affirmed his conviction, concluding that it could not extend *Scales*. *State v. Conger*, No. C3–01–699, 2002 WL 77046, at *1 (Minn.App. Jan.22, 2002). We granted review to consider whether *Scales* should be extended to noncustodial interrogations. We conclude it should not; Conger's statement was properly admitted and his conviction must be affirmed.

A brief review of the facts will provide the context for our decision. Social workers in Otter Tail County presented a

"Touch Program" at the elementary school of ten-year-old A.C. on January 20, 2000, introducing children to the idea of good and bad touches. At the close of the program, A.C. told a nearby social worker that her brother gave her "bad touches," describing his kicking and pinching of her genitals. When social worker Sharon Bjork met with A.C. the next day to follow up, A.C. described her father rubbing her genitals and breasts once or twice when she climbed in bed with her parents. Bjork contacted the local police, who then questioned A.C.'s father, Douglas Conger.

Detective Fox interviewed Conger at the Perham police station and did not tape-record their conversation. Bjork interviewed Conger's wife, Barbara Conger, at the same time and recorded that conversation. Fox intentionally did not record Conger's interview, though equipment was available. He said he chose not to record the interview because Conger was not in custody, and because "[s]ometimes people talk more freely when they don't have a little red light on a tape recorder sitting on the table in front of them." Fox testified at the omnibus hearing that he did not intend to place Conger under arrest, but viewed him as a "participant in a possible crime."

During his interview, Conger denied any inappropriate touching of A.C. After about 20 minutes of questioning, Detective Fox told Conger that he was finished, but may have questions later. After finding discrepancies between what Barbara Conger told the social worker and what Douglas Conger had said, Fox asked Conger if he could pose some additional questions. Conger agreed. This second session of interviewing lasted 20 to 25 minutes and was not recorded. Fox testified at trial that during this second session Conger appeared nervous, flushed, and fidgety. Fox also testified that Conger stated to-

ward the end of the second interview: "[i]f my daughter said it happened, it must have happened."

At the omnibus hearing, Conger moved to suppress his statement to Detective Fox based on the *Scales* decision. In *State v. Scales*, 518 N.W.2d 587, 592 (Minn.1994), this court mandated that police record all custodial interrogations, including the *Miranda* warning, or risk suppression of the evidence obtained. Conger asks that we extend the holding of *Scales* to require that police record noncustodial interrogations of suspects in police stations.

Preliminarily, we note that Conger did not properly preserve for review the issue of expanding *Scales*. At trial, Conger asked the district court to rule that the second interview became custodial, bringing his statement within the ambit of *Scales*. Changing tactics, Conger appealed to the court of appeals and this court to use its supervisory power to broaden the *Scales* decision to encompass noncustodial statements. A reviewing court must only consider the issues presented and heard by the trial court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). Although this issue was not preserved for appeal, we will exercise our discretion to consider it because of its import for criminal procedure. *See State v. Basting*, 572 N.W.2d 281, 286 (Minn.1997) (finding this court can hear issues raised for the first time before it on a discretionary basis). We exercise de novo review on issues of law. *State v. Costello*, 646 N.W.2d 204, 207 (Minn.2002).

In two cases prior to *Scales* this court expressed increasing support of recording. *State v. Pilcher*, 472 N.W.2d 327, 332–33 (Minn.1991); *State v. Robinson*, 427 N.W.2d 217, 224 n. 5 (Minn.1988). In *Robinson* we observed that disputes about whether or not the *Miranda* warning was given could be avoided if police record

those warnings. And in *Pilcher* we urged the police to record all *Miranda* warnings and waivers. In *Scales* we concluded that the interests of justice required that police record all custodial interrogations. We held that "all custodial interrogation including any information about rights, any waiver of those rights, and all questioning shall be electronically recorded where feasible and must be recorded when questioning occurs at a place of detention." *Scales*, 518 N.W.2d at 592.

Although no empirical studies have been published assessing the impact of the *Scales* decision, from our vantage point the recording requirement has had positive effects. We take judicial notice of the fact that fewer cases come before us in which a key issue is whether a suspect waived his or her constitutional rights during interrogation.[1] The apparent reduction in appellate cases challenging *Miranda* warnings and waivers suggests that *Scales* has suc-

ceeded in providing an objective record to answer the contentious disputes around those issues. A national study of police departments that videotape custodial interrogations offers evidence of other benefits we predicted in *Scales*. In those jurisdictions, videos help police accurately assess a suspect's guilt or innocence, foster humane treatment of suspects and respect for civil rights, and serve to persuade the public that police interrogations are professional and trustworthy. William A. Geller, U.S. Dep't of Justice, *Videotaping Interrogations and Confessions* 10 (1993). Ninety-seven percent of those police departments found videotaping "on balance, to be useful." *Id.*

Despite evidence of the benefits of recording, many state courts faced with the question have declined to require that police record custodial interrogations.[2] Minnesota, Alaska, and Texas are the only

---

**1.** In 1995, before the impact of *Scales* could be felt, this court heard at least six cases concerning the validity of waivers. *See, e.g., State v. Hince*, 540 N.W.2d 820 (Minn.1995); *State v. Williams*, 535 N.W.2d 277 (Minn. 1995); *State v. Wilson*, 535 N.W.2d 597 (Minn.1995); *State v. Champion*, 533 N.W.2d 40 (Minn.1995); *State v. Roan*, 532 N.W.2d 563 (Minn.1995); *State v. Thaggard*, 527 N.W.2d 804 (Minn.1995). In 2001, only one case addressed the validity of a *Miranda* warning and waiver. *State v. Hannon*, 636 N.W.2d 796 (Minn.2001).

**2.** Eleven states had already found recording was not required under their state due process clause prior to *Scales:* Colorado, Georgia, Idaho, Illinois, Maine, Mississippi, Nevada, Utah, Vermont, Washington, and West Virginia. *People v. Raibon*, 843 P.2d 46, 49 (Colo.Ct.App.1992); *Coleman v. State*, 189 Ga. App. 366, 375 S.E.2d 663, 664 (1988); *State v. Rhoades*, 120 Idaho 795, 820 P.2d 665, 674–75 (1991); *People v. Everette*, 187 Ill. App.3d 1063, 135 Ill.Dec. 472, 543 N.E.2d 1040, 1047 (1989), *rev'd on other grounds*, 141 Ill.2d 147, 152 Ill.Dec. 377, 565 N.E.2d 1295 (1990); *State v. Buzzell*, 617 A.2d 1016, 1018 (Me.1992); *Williams v. State*, 522 So.2d 201,

208 (Miss.1988); *Jimenez v. State*, 105 Nev. 337, 775 P.2d 694, 696–97 (1989); *State v. James*, 858 P.2d 1012, 1018 (Utah Ct.App. 1993); *State v. Gorton*, 149 Vt. 602, 548 A.2d 419, 422 (1988); *State v. Spurgeon*, 63 Wash. App. 503, 820 P.2d 960, 963 (1991); *State v. Kilmer*, 190 W.Va. 617, 439 S.E.2d 881, 893 (1993).

At least nine states since *Scales* have considered the question and opted against requiring recording: California, Connecticut, Hawaii, Indiana, Massachusetts, Michigan, New Hampshire, Pennsylvania, and Tennessee. *People v. Holt*, 15 Cal.4th 619, 63 Cal.Rptr.2d 782, 937 P.2d 213, 242–43 (1997); *State v. James*, 237 Conn. 390, 678 A.2d 1338, 1360 (1996); *State v. Kekona*, 77 Hawai'i 403, 886 P.2d 740, 745–46 (1994); *Stoker v. State*, 692 N.E.2d 1386, 1390 (Ind.Ct.App.1998); *Commonwealth v. Diaz*, 422 Mass. 269, 661 N.E.2d 1326, 1328–29 (1996); *People v. Fike*, 228 Mich.App. 178, 577 N.W.2d 903, 906–07 (1998); *State v. Barnett*, 147 N.H. 334, 789 A.2d 629, 632 (2001); *Commonwealth v. Craft*, 447 Pa.Super. 371, 669 A.2d 394, 394–98 (Pa.Super.Ct.1995); *State v. Godsey*, 60 S.W.3d 759, 771–72 (Tenn.2001).

states that exclude statements based on a failure to record.[3] A number of courts have recognized the merits of recording, but have refused to require the practice.[4] No state has yet done what Conger requests: require that police record noncustodial interrogations.

Conger argues that there is a serious loophole in *Scales* because police control the decision when to place a person in custody, and they can delay that decision to avoid the recording requirement. We recognize this potential for abuse of *Scales*. We also recognize that recording noncustodial interrogations when feasible would be beneficial. It would protect the due process rights of suspects by providing a record that establishes precisely what was said, and provides a basis to determine if and when their interrogation became cus-

todial, and whether any statements were the result of coercion. As this court observed in *Scales*, an objective record of the encounter would prevent factual disputes about the denial of a defendant's constitutional rights, make it possible for defendants to challenge misleading or false testimony, reduce baseless claims against the state, and discourage unduly coercive police tactics. *Scales*, 518 N.W.2d at 591.

But many of the authorities relied on in *Scales* do not support its extension to the noncustodial context. The Uniform Rules of Criminal Procedure only require recording in custodial interrogations,[5] as does the Model Code of Pre–Arraignment Procedure.[6] Similarly, the majority of the academic articles advocating a recording requirement limit their endorsement to custodial interrogations.[7] And while Alas-

---

3. *State v. Scales*, 518 N.W.2d 587, 592 (Minn.1994); *Stephan v. State*, 711 P.2d 1156, 1162 (Alaska 1985); Tex.Code Crim. Proc. art. 38.22 § 3(a)(1) (2002). New Hampshire opted for a middle ground, holding that "immediately following the valid waiver of a defendant's *Miranda* rights, a tape recorded interrogation will not be admitted into evidence unless the statement is recorded in its entirety." *Barnett*, 789 A.2d at 632.

4. *See, e.g., Holt*, 937 P.2d at 242; *James*, 678 A.2d at 1360; *Stoker*, 692 N.E.2d at 1390; *Diaz*, 661 N.E.2d at 1329; *Godsey*, 60 S.W.3d at 772.

5. Rule 243 begins: "A person who is in custody or otherwise deprived of his freedom of action in any significant way may not be questioned regarding any offense unless" he/she is warned, and waives his/her rights. Uniform Rules of Criminal Procedure R. 243 (Proposed Final Draft 1974). It then goes on to say that "[t]he information of rights, any waiver thereof, and any questioning shall be recorded upon a sound recording device whenever feasible and in any case where questioning occurs at a place of detention." *Id.* The language "deprived of his freedom of action in any significant way" comes directly from the *Miranda* decision, *Miranda v. Ari-*

*zona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

6. "This Section requires that law enforcement agencies make full written records and sound recordings to aid the resolution of factual disputes which may subsequently arise concerning what happened to an arrested person in custody." Model Code of Pre–Arraignment Procedure § 130.4 note at 39 (Proposed Official Draft Complete Text and Commentary 1975).

7. The two academics cited in *Scales* differ in their recommendation. Yale Kamisar, *Forward: Brewer v. Williams—A Hard Look at a Discomfiting Record*, 66 Geo. L.J. 209, 237–41 (1977) appears to advocate recording custodial interrogations, while Glanville Williams, *The Authentication of Statements to the Police*, [1979] Crim. L.Rev. 6, 15, makes a case for recording everything in an interview room. Other academics limit their advocacy to custodial settings. *See, e.g.,* Gail Johnson, *False Confessions and Fundamental Fairness: The Need for Electronic Recording of Custodial Interrogations*, 6 B.U. Pub. Int. L.J. 719 (1997); Daniel Donovan & John Rhodes, *Comes a Time: the Case for Recording Interrogations*, 61 Mont. L.Rev. 223, 224 (2000). *Cf.* Richard A. Leo, *Questioning the Relevance of Miranda*

ka and Texas similarly require recording of custodial interrogations, no state has extended such a mandate to noncustodial situations.

In *Pilcher* and *Robinson* this court expressed concern about its ability to determine whether a suspect in custody had in fact waived his or her constitutional right to counsel, and in *Scales* we established a practice that would ensure that police create an objective record of custodial conversations. But *Miranda* rights do not attach until a suspect is in custody. Thus, extending the recording requirement to noncustodial interrogations would be a significant departure from the *Robinson–Pilcher–Scales* line of reasoning.

In *Scales* we exercised our supervisory power to insure the fair administration of justice after law enforcement had ignored our warnings to record when feasible. We remind law enforcement that the fair administration of justice is not served if police manipulate the custody status of suspects to avoid the *Scales* recording requirement. And we observe that in Conger's case a recording would have resolved the disputes about his custodial status and the context of his statement to Detective Fox. However, while many of the benefits of recording custodial interrogations would accrue to noncustodial interrogations, the interests of justice do not require that police record all noncustodial interrogations at this time.

We affirm the court of appeals and uphold Conger's conviction.

ising interrogation reform of our era," without qualifying the type of interrogation).