RENDERED: MARCH 20, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1258-ME

COMMONWEALTH OF KENTUCKY             APPELLANT


                APPEAL FROM BULLITT CIRCUIT COURT
v.           HONORABLE MONICA K. MEREDITH, JUDGE
                 ACTION NO. 24-J-00356-001


A.L.; COMMONWEALTH OF
KENTUCKY, CABINET FOR
HEALTH AND FAMILY SERVICES;
D.L.; G.M., A MINOR CHILD; N.M.;
AND T.M.                  APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, KAREM, AND TAYLOR, JUDGES.

KAREM, JUDGE: The Bullitt County Attorney (the "Commonwealth" or "BCA")

appeals from the Bullitt Circuit Court's adjudication order determining that the

Commonwealth had not met its burden of establishing that an act of neglect or

abuse had occurred by a preponderance of the evidence.  After a careful review of the record, facts, and law, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

G.M. ("Child") was born in August of 2024.  On November 26, 2024, when Child was approximately three months old, the Cabinet for Health and Family Services (the "Cabinet") filed a petition alleging abuse or neglect of Child by the biological parents, A.L. and N.M. (the "Parents").  That same day, the trial court granted the petition placing Child in the emergency custody of the Cabinet. The petition stated in part:

> During investigation, [social worker] observed bruising type injury on [Child's] stomach area which was black and reddish in color.  [Natural Father], [Natural Mother], [Paternal Grandmother] and [Maternal Grandmother] were in a caretaking role of the child in last 72 hours prior to injury being observed.  [Social worker] verified with PCP [Primary Care Provider] that PCP did not suspect non accidental trauma (NAT) that PCP placed child in car seat, and that markings line up with top strap and bottom buckle.  [Social worker] verified with Kosair's Children [Hospital] Downtown ER that ER Doctor was unable to make a determination of cause of injury.  [Social worker] verified with PPS that PPS states that the injury was NAT.  [Social worker] verified with chiropractor Dr. [Kuperus] that [Natural Mother] advised Dr. [Kuperus] of the bruising and requested an examination of the child.  Dr. [Kuperus] reported that [Natural Mother] stated that [Natural Mother] observed injuries on 11/07/2024 just prior to taking [Child] to Dr. [Kuperus] for appointment on 11/07/2024, that [Natural Mother] questioned, sent pictures and text messages and video chat with [Natural Mother] and [Maternal

Grandmother] to inquire of bruising. Dr. [Kuperus] reported [Natural Mother] has been cooperative and showed protective factors concerning child. [Social worker] verified through LEO that LEO has conducted interviews and that LEO will not be seeking charges and closing criminal investigation as unfounded . . . .

The circuit court appointed a Guardian *Ad Litem* ("GAL") as counsel for Child. Parents hired counsel for themselves, and the temporary removal hearing was held on December 2, 2024. Following the presentation of evidence, the trial judge entered an order finding that the Commonwealth had not proved by a preponderance of the evidence that there were reasonable grounds to believe that Child would be dependent, neglected, or abused if returned to, or left in the custody of, Parents. Child was thus returned to the care of Parents. On December 3, 2025, the court entered an order scheduling a pretrial conference for January 16, 2025.

On February 20, 2025, Parents propounded to the BCA a set of Interrogatories, Requests for Production of Documents, and Requests for Admissions with a copy mailed to the GAL. Parents did not mail a copy of the document to the Cabinet; however, the BCA forwarded a copy to the Hon. Jennifer Clay, a lawyer employed by the Cabinet.

The Request for Admissions included in pertinent part:

REQUEST NO. 1: Please admit that there is no direct evidence of anyone, including the Respondents, having

-3-

abused or neglected or subjecting to a risk of any abuse or neglect the child herein.

REQUEST NO. 2: Please admit that Dr. Melissa Currie has not provided any plausible direct explanation for the alleged non-accidental bruising to the minor child.

REQUEST NO. 3: Please admit that the child's car seat is a plausible basis for the child's bruises.

REQUEST NO. 4: Please admit that Dr. Melissa Currie has never personally examined the child in question.

REQUEST NO. 5: Please admit that the Respondents have been entirely cooperative with the Cabinet throughout the investigation.

REQUEST NO. 6: Please admit that at the present time there is no reason to believe that the child would be at risk of abuse or neglect by remaining in the care and custody of the Respondents.

REQUEST NO. 7: Please admit that the Cabinet has no concerns about the Respondents, their home, or the safety of the child at this time.

. . .

REQUEST NO. 11: Please admit that the child's pediatrician believes that the car seat was the basis for the bruising herein and that the Cabinet knew this before filing the petition herein.

REQUEST NO. 12: Please admit that the [C]abinet has admitted that the only reason they filed the present case was because quote "they had to" as testified to by [the Cabinet].

On April 3, 2025, when no response was received, Parents filed a Motion to Compel Discovery and a Motion to Deem the Requests for Admissions Admitted. The court held a hearing regarding Parents' motion on May 1, 2025, wherein the BCA maintained that it was not their job to answer interrogatories on behalf of the Cabinet. Parents argued that, pursuant to statute, it is the job of the county attorney to prosecute the case and therefore respond to discovery requests. The trial court agreed with Parents and granted their motions which included the motion to deem the admissions admitted. An adjudication date was set for September 18, 2025.

Prior to the adjudication hearing, on May 29, 2025, the parties, along with counsel for the Cabinet, appeared before the trial court on the BCA's Motion to Alter, Amend, or Vacate the judge's order. The BCA argued Parents had an obligation to serve the Cabinet because the BCA does not represent the Cabinet. Parents reiterated that by statute the county attorney prosecutes DNA cases and is therefore the correct agency to which discovery requests should be propounded. Moreover, Parents argued that there is no alternate attorney of record for the Cabinet in this case. At the conclusion of the hearing, the trial judge allowed each party fourteen days to supplement the record stating that at the conclusion of that time the issue would be deemed submitted for a ruling.

On June 9, 2025, the Cabinet filed a Response to the BCA's arguments. They agreed with Parents that it is the responsibility of the county attorney to prosecute the case and thus respond to discovery requests. The Cabinet specifically stated:

> [E]xpecting counsel for the [Cabinet] to respond to discovery propounded upon the BCA in a juvenile case is as illogical as expecting a police officer's interagency counsel to respond to discovery requests propounded on the county attorney in its prosecution of a criminal action.
>
> Wherefore, and ascribing only genuine misunderstanding to the BCA's understanding of its role in juvenile actions and in the interest of protecting the subject child to this matter, the Cabinet requests that this Court issue an Order affording the BCA additional time to respond to any discovery requests previously propounded upon it in this matter.

Both Parents and the BCA filed replies to the Cabinet's response restating their respective positions.

On August 5, 2025, the BCA filed both its Notice of Expert Witness and Notice of Filing. In these filings, the BCA identified Dr. Melissa Currie as the witness they intended to call in their case-in-chief and filed photos of Child, certified chiropractic records, the report prepared by Dr. Currie, and the certification of custodian records.

On September 5, 2025, the trial court entered its order denying the BCA's motion to alter, amend, or vacate noting that the BCA never filed any

request for a protective order or an order to limit discovery relating to Parents' request.

The DNA adjudication hearing ultimately went forward on September 18, 2025. Prior to the hearing, Parents had filed a motion *in limine* to prevent the BCA from presenting any evidence due to the trial court's ruling on their Request for Admissions. Ultimately, the trial court allowed the BCA to call the social worker who had originally filed the petition and had also testified at the temporary removal hearing. However, the trial court disallowed the testimony of Dr. Currie. In an effort to preserve Dr. Currie's testimony for appellate purposes, the BCA requested she be allowed to testify by avowal. This request was made three separate times during the trial and each time the trial judge denied it.

At the conclusion of the BCA's evidence, Parents' attorney cross-examined the caseworker.

> Parents' Attorney: After [the hospital] did all of these checks, [Child] was medically cleared. Correct?
>
> Witness: Medically cleared as in how, sir?
>
> Parents' Attorney: Let me ask it another way. Did anybody uncover any other issues with [Child] other than bruising?
>
> Witness: That you would have to ask them on that. I cannot speak to what other people may have done or not done.

BCA: I'm sorry. I am not objecting. I just didn't hear what [Parents' Attorney] said. What was the question?

Parents' Attorney: My question was . . . after [Child] was examined in the hospital, . . . did anyone else find any issues with him other than the bruising on his abdomen?

Witness: Yes, the answer would be yes to that.

Parents' Attorney: They did find other issues?

Witness: You asked if anybody else found any other issues?

Parents' Attorney: Yes.

Witness: My answer to "anybody else" would be yes.

Parents' Attorney: What were those issues?

Witness: What are the issues? That . . . [Dr. Currie] states that the injuries were non-accidental.

At the end of cross-examination, based on this exchange, the BCA motioned the court to allow Dr. Currie to testify arguing that Parents opened the door stating "[Parents' attorney] asked if 'anyone else found non-accidental injury.'" The trial judge disagreed and overruled the motion.

At the conclusion of the BCA's evidence Parents made a motion for a directed verdict.[1] The trial court ruled from the bench and dismissed the case.

---

[1] As this Court explained in *Brown v. Shelton*, 156 S.W.3d 319 (Ky. App. 2004), "a directed verdict under CR 50.01 is improper in a trial by the court without a jury. [Kentucky Rules of Civil Procedure] CR 41.02(2) governs an action tried by the court without a jury. Under the provisions of CR 41.02(2), a defendant may move for dismissal after plaintiff's presentation of

Subsequently, the trial court put into writing on a calendar order its recitation of the evidence entered at the hearing, memorializing its decision to dismiss the case. On September 22, 2025, the trial court entered a form order, "Order Adjudication Hearing," checking the appropriate boxes indicating an adjudication hearing was held and that dependency, neglect, or abuse had not been proved by a preponderance of the evidence. This appeal by the BCA followed.[2]

## PRELIMINARY ISSUE

As a preliminary issue we must address the deficiencies of the brief of Appellees A.L. and N.M. RAP[3] 32(B)(3) and (4) mandate the form and style of an appellee brief and state that the appellee's brief must be in accordance with the requirements for both the appellant's statement of the case and argument. RAP 32(A)(3) and (4) require the statement of the case and argument sections of an appellant's opening brief to contain "ample references to the specific location in the record" where "each" issue of law or factual statement may be located. Though "ample" is not defined in RAP 32, we have held it means citations to the

---

evidence; however, a plaintiff may not move for judgment after his presentation of evidence." *Id.* at 321.

[2] Neither party attached as exhibits to their briefs the documents in the record on which they depended for their arguments. Appellant failed to attach the trial court's calendar order detailing the testimony at the hearing. Appellees failed to include their Request for Admissions. Parties are warned, in any future litigation, they should include all documentation pertinent to this Court's review.

[3] Kentucky Rules of Appellate Procedure.

trial court record must "permeate" the brief. *Clark v. Workman*, 604 S.W.3d 616, 619 (Ky. App. 2020). This is especially true where, as here, the central issues call into question the appropriateness of the trial judge's decisions regarding evidentiary issues at trial. *Sub judice*, Appellees fail to cite to any portion of the video record of the hearings that are the subject of this appeal.

RAP 10(B) specifically provides that:

[T]he failure of a party to substantially comply with the rules is ground for such action as the appellate court deems appropriate, which may include:

(1) A deficiency notice or order directing a party to take specific action,

(2) A show cause order,

(3) Striking of filings, briefs, record or portions thereof,

(4) Imposition of fines on counsel for failing to comply with these rules of not more than $1,000,

(5) A dismissal of the appeal or denial of the motion for discretionary review, and

(6) Such further remedies as are specified in any applicable rule.

Given the important nature of dependency, neglect, and abuse cases, we are not inclined to strike Appellees' brief in its entirety or any portions thereof nor will we impose any other sanction. Instead, we will proceed with a full review of the issues. However, we warn counsel that in the future this Court may not be

-10-

so tolerant, and we admonish counsel to strictly follow the rules or risk having any future briefs stricken and/or being held in contempt.

## **STANDARD OF REVIEW**

In DNA cases, it is the Cabinet's burden to prove it is more likely than not that the subject-children were neglected or abused. *M.C. v. Cabinet for Health and Family Services*, 614 S.W.3d 915, 921 (Ky. 2021) (footnote omitted). We will not set aside a family court's findings of fact unless they are clearly erroneous. *Id.* (footnote omitted). "A finding of fact is clearly erroneous if it is not supported by substantial evidence, which is evidence sufficient to induce conviction in the mind of a reasonable person." *Id.* (footnote omitted). Absent an abuse of discretion, we will not disturb a family court's decision where its findings are supported by substantial evidence, and it applied the correct law. *Id.* (footnote omitted).

The family court is responsible for determining the admissibility of evidence under KRE[4] 901. *Kays v. Commonwealth*, 505 S.W.3d 260, 270 (Ky. App. 2016) (citation omitted). We review a court's decisions regarding admission of evidence for abuse of discretion. *Id.* at 269 (citation omitted). A court abuses its discretion only when its ruling is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (citation omitted).

---

[4] Kentucky Rules of Evidence.

## ANALYSIS

At issue in this case is the very basic question of what it means to prosecute. Is the county attorney responsible for answering discovery propounded by a respondent in a DNA case? The BCA maintains that it is not. However, our unequivocal answer is yes!

The BCA cites *G.M.A. v. Commonwealth*, 689 S.W.3d 142 (Ky. App. 2024), for the proposition that the Cabinet is a party-plaintiff in DNA cases. We agree. However, the Cabinet is in the unique position of being both the petitioner in a DNA case and providing a witness for the prosecution in the person of the Cabinet's social worker. The BCA extrapolates that designation as justification to relieve themselves of their statutory responsibilities to prosecute. *G.M.A.* makes no such finding.

Initially, we note DNA proceedings are quasi-criminal actions because the issues in such cases go to the protected constitutional right to parent a child. Cases are commenced by the filing of a petition in the juvenile session of the District Court. KRS[5] 620.070(1). KRS 620.040 outlines the investigative responsibilities of the Cabinet upon receipt of a report alleging abuse or neglect of a child. Social workers employed by the Cabinet are most often witnesses in a

---

[5] Kentucky Revised Statutes.

-12-

DNA case to provide sworn testimony regarding the results of the investigative process.

Legislation grants to prosecutors, in both the offices of the Commonwealth's attorney and the county attorney, the power to prosecute cases in their capacity as officers of the executive branch. KRS 15.725(1), (2). Pursuant to KRS 69.210, the prosecution of cases in juvenile court is the responsibility of the county attorney.

> (2)(a) The county attorney shall attend to the prosecution in the juvenile session of the District Court of all proceedings held pursuant to petitions filed under KRS Chapter 610 and over which the juvenile session of the District Court has jurisdiction pursuant to KRS Chapter 610.
>
> (b) Notwithstanding paragraph (a) of this subsection, the attorneys for the Cabinet for Health and Family Services may attend to the prosecution of any case under KRS Chapter 620 upon written notice to the county attorney and judge of the District Court or family division of the Circuit Court.

KRS 69.210.

Our quest to locate Kentucky caselaw interpreting the above statute to explain in more detail the responsibilities of a prosecutor was in vain. Apparently, no such explanation has ever been required in the history of the Commonwealth. However, the American Bar Association ("ABA") outlines the universally accepted responsibilities of a prosecutor in its Fourth Edition (2017) of the

Criminal Justice Standards for the Prosecution Function.[6] Although these

standards specifically identify the prosecutor's role in criminal cases, they are

equally attributable to quasi-criminal cases such as the case *sub judice*.

**Part I: General Standards**

**Standard 3-1.1 The Scope and Function of These Standards**

(a) As used in these standards, "prosecutor" means any attorney, regardless of agency, title, or full or part-time assignment, who acts as an attorney to investigate or prosecute criminal cases or who provides legal advice regarding a criminal matter to government lawyers, agents, or offices participating in the investigation or prosecution of criminal cases. These Standards are intended to apply in any context in which a lawyer would reasonably understand that a criminal prosecution could result.

. . .

**Standard 3-5.4 Identification and Disclosure of Information and Evidence**

. . .

(e) A prosecutor should timely respond to legally proper discovery requests, and make a diligent effort to comply with legally proper disclosure obligations, unless otherwise authorized by a court. When the defense makes requests for specific information, the prosecutor should provide specific responses rather than merely a general acknowledgement of discovery obligations. Requests and responses should be tailored to the case and

---

[6] https://www.american bar.org/groups/criminal_justice/resources/standards/prosecution-function (last visited Mar. 18, 2026).

-14-

> "boilerplate" requests and responses should be
> disfavored.

*Id.* at 1, 27. Clearly, there is a general understanding in the legal profession that a prosecutor's responsibility includes responding to discovery requests.

In the case at bar, the Cabinet was the witness for the BCA in the prosecution of the DNA case. Thus, it was the BCA's responsibility to ensure answers to discovery were completed by their witness and filed with the court. As well stated by the Cabinet;

> [E]xpecting counsel for the [Cabinet] to respond to
> discovery propounded upon the BCA in a juvenile case is
> as illogical as expecting a police officer's interagency
> counsel to respond to discovery requests propounded on
> the county attorney in its prosecution of a criminal
> action.

Because we find that the BCA had the responsibility to respond to discovery including requests for admissions propounded on it, we find no merit in the argument that Parents were required to serve said documents on the Cabinet. And it is undisputed that the BCA never responded to the request for admissions. Therefore, the trial court was well within its authority to deem the request for admissions admitted per its May 6, 2025 order and its denial of BCA's motion to alter, amend, or vacate entered on September 5, 2025.[7]

---

[7] Attorneys often file a motion to "deem" discovery requests as admitted. This adds another motion to our overcrowded court dockets. While attorneys may feel more comfortable getting a court order to show this status, it is unnecessary. If requests for admissions are not denied within

Notably on August 5, 2025, prior to the hearing on BCA's motion to alter, amend, or vacate, the BCA filed both its Notice of Expert Witness and Notice of Filing. In these filings, BCA identified Dr. Melissa Currie as the witness they intended to call in their case-in-chief and filed photos of Child, certified chiropractic records, the report prepared by Dr. Currie, and the certification of custodian records.[8]

On September 18, 2025, the day of trial, Parents and their counsel appeared in person, but all other parties and witnesses appeared remotely. The court began by addressing Parents' motion *in limine* prohibiting the BCA from introducing any evidence or testimony that contradicted the facts already deemed admitted and, in any way, touched on the interrogatories and requests for production of documents that remained unanswered. Following arguments, the trial judge granted Parents' motion. This effectively and appropriately prohibited the testimony of Dr. Currie and limited the BCA to produce evidence contained within the original petition.

---

the time allotted, they are admitted with no further action by the court. CR 36.01 states that the matter "is admitted." An attorney may want to document the failure to respond in the court record by filing the unanswered requests and indicating no responses were made, but no order is required. Indeed, the civil rules create a process only for obtaining a court order to alter the admitted status. CR 36.02.

[8] Parents acknowledged on the record that they had received Dr. Currie's report although the trial court mistakenly believed they had not.

The court then asked, given this ruling, if the BCA was ready to proceed. The BCA announced ready and called as its witness the social worker who previously testified at the temporary removal hearing.

At the conclusion of direct examination of the social worker, Parents commenced with cross-examination as recited above. At the end of the cross-examination, the BCA motioned the court to allow Dr. Currie to testify arguing that Parents opened the door, stating, "[Parents' attorney] asked if 'anyone else found non-accidental injury.'" This was a clear misstatement of the question propounded by Parents. However, in the heat of trial, combined with the unreliable nature of remote testimony, it is understandable that the BCA misunderstood the question. But the difference between what was *actually* said and what the BCA *thought* was said is significant.

When referencing the concept of "opening the door," the BCA was presumably referring to "the doctrine of 'curative admissibility,' *i.e.*, when one party introduces improper evidence, such 'opens the door' for the other party to introduce improper evidence in rebuttal whose only claim to admission is that it explains or rebuts the prior inadmissible evidence." *Metcalf v. Commonwealth*, 158 S.W.3d 740, 746 (Ky. 2005), *as modified on denial of reh'g* (Apr. 21, 2005). "Generally stated, 'opening the door' to otherwise inadmissible evidence is a form of waiver that happens when one party's use of inadmissible evidence justifies the

opposing party's rebuttal of that evidence with equally inadmissible proof." *Workman v. Commonwealth*, 687 S.W.3d 168, 172 (Ky. App. 2024) (citations omitted). The admissibility question *sub judice* focuses on whether Parents "opened the door" to allowing Dr. Currie to testify. The question "is not whether initial proof shares some common quality with proof offered in response. Rather, it is whether the latter answers the former, and whether it does so in a reasonable way without sacrifice of other important values." *Commonwealth v. Stone*, 291 S.W.3d 696, 701-02 (Ky. 2009).

When reviewing the testimony in question in this case, it is obvious that Parents' actual question, ". . . after [Child] was examined in the hospital, . . . did anyone else find any issues with him other than the bruising on his abdomen?" is very different from the question the BCA believed was asked. "[Parents' attorney] asked if 'anyone else found non-accidental injury.'" Had the Parents asked about any other witnesses' findings, Parents may have arguably "opened the door" for the trial court to allow Dr. Currie's testimony. However, a question about issues *other than the bruising on Child's abdomen* does not allow previously disallowed evidence regarding the nature of Child's bruising. The trial court appropriately denied the BCA's motion to permit Dr. Currie to testify under the theory of "curative admissibility."

Because the trial court is affirmed regarding the above evidentiary issue, the issue of whether the judge should have allowed Dr. Currie to testify by avowal is moot. However, it is imperative that trial courts understand the importance of the avowal practice under KRE 103(a)(2) which serves to preserve issues for appellate review. While trial courts may begrudge the time it takes to make an avowal record, it is clearly a better practice to allow it. Yet it is sometimes unnecessary as the rule itself recognizes. In this case, we can tell from the context of the request to allow Dr. Currie to testify that she would have said the injuries were not accidental (even though they were apparently consistent with the straps which held the baby in a car seat). This non-accidental comment by Dr. Currie is what was volunteered by another witness. We also have a copy of Dr. Currie's report in the record. But, for proper preservation of the issues for appeal, it would not have taken but a matter of seconds for the attorney to formally offer the report of Dr. Currie and for it to be accepted specifically as avowal evidence.

## CONCLUSION

For the foregoing reasons, the Bullitt Family Court's order dismissing the case is AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:

Russell Coleman
Attorney General of Kentucky

Matthew A. Pruitt
Special Assistant Attorney General
Assistant Bullitt County Attorney
Shepherdsville, Kentucky

BRIEF FOR APPELLEE
COMMONWEALTH OF
KENTUCKY, CABINET FOR
HEALTH AND FAMILY
SERVICES:

Erika L. Priddy
Elizabethtown, Kentucky

BRIEF FOR APPELLEES A.L. AND
N.M.:

W. Steven Middleton
Frankfort, Kentucky